537 So.2d 1363 (1989)
Vince Powell THORNTON
v.
Nora Lee SHOWS, a Minor, By her Father and Next Friend, Sidney B. Shows.
No. 58210.
Supreme Court of Mississippi.
January 25, 1989.
Travis Buckley, Ellisville, for appellant.
Harris Sullivan, Jr., Mendenhall, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and PITTMAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Today's appeal is from an adverse ruling of the Circuit Court of Covington County, Mississippi, in the May 1986 Term of court. The paternity proceeding filed by Nora Lee Shows against Vincent Powell Thornton sought to establish Thornton as the father of Christopher Stewart Shows, a male child, born to Ms. Shows on September 21, 1984. Upon a trial by jury, a verdict was returned in favor of Ms. Shows, adjudging Thornton to be the father of the child.
Aggrieved by the lower court's final order, Vince Thornton appeals and assigns as error:
I. The Trial Court Unduly Limited the Defendant in Direct Examination of Witnesses Called by the Appellant.
II. The Trial Court Erred in Permitting the Plaintiff to Show the Conduct of Relatives as Evidence of Paternity.
Finding no reversible error, we affirm.

STATEMENT OF THE FACTS
Nora Lee Shows (hereinafter Nora), age 21 at the time of the trial, met Vince Powell Thornton (hereinafter Vince), age 23 at the time of the trial, at her parents' church in Simpson County, Mississippi. They both grew up in Simpson County, their families living only about five miles apart. In July of 1981, Vince began visiting Nora at her parents' home and started "formally" dating her, or taking her out, in November of *1364 1981. Vince continued seeing Nora at her parents' home until he started school at Mississippi State University. Thereafter, the couple commenced having sexual intercourse in March 1982 and continued into December of 1983. Nora got pregnant in December of 1983, having had her last normal menstrual period commencing on December 13, 1983.
On the night of February 3, 1984, Nora and Vince went to the Shows home and told Mrs. Sadie Shows, Nora's mother, that Nora was pregnant. Vince asked Mrs. Shows would she like to have him as a son-in-law and said that he would marry Nora. Vince spent the night and the next morning asked Mr. Sidney Shows, Nora's father, if he could marry her. At first Mr. Shows refused permission; however, upon being told by Vince that he would be getting a grandchild as well as a son-in-law, he assented. The parties, having a blood test made, began planning the wedding date.
Several days later, Vince called Mrs. Shows and told her that he desired to postpone the wedding. At a later date, Vince told Mr. and Mrs. Shows that he would not marry Nora at that time. The parties never married.
Nora, thereafter, filed a complaint for adjudication of paternity and order of filiation against Vince. Being a minor aged 19, Nora filed this complaint by her father and next friend, Sidney B. Shows, on August 22, 1984, in the Chancery Court of Washington County, Mississippi, the residence of Vince at the time. The complaint alleged that she was pregnant with a child due to be born on or about September 20, 1984, and that Vince was the father of the unborn child. The complaint prayed for a judgment and order of filiation adjudicating that he was the father and that he be required to pay all reasonable expenses of pregnancy, confinement, education, support, maintenance, attorney's fees and costs, and that he be required to give security. Vince then filed a general denial on October 1, 1984.
On April 3, 1985, Nora obtained leave of court to file an amendment to her complaint. The amendment alleged that the child in question, Christopher Stewart Shows, was born on September 21, 1984. The amended complaint also set forth certain specific expenses incurred, and adopted the prayer of the original complaint by reference.
On November 5, 1985, Vince demanded a jury trial by motion, as well as filed a general denial to the amendment on November 8, 1985. The Chancery Court of Washington County, because of the demand of trial by jury, transferred the cause to the Circuit Court of Covington County, Mississippi, by order dated November 18, 1985.
Vince also filed a cross-complaint in the Chancery Court of Washington County on November 20, 1985, asking for custodial and visitation rights with the child, or alternatively that the care, custody and control of the child be awarded to him, and alleging that Nora was unfit. Nora then filed an answer and defenses in Chancery Court on December 11, 1985. It contained a general denial of the allegations of the cross-complaint and defenses, alleging that Vince had deserted and abandoned the child and that the cross-complaint had not been filed within the time and in the manner provided by the M.R.C.P. Apparently counsel for the parties did not realize that at the time these latter pleadings were filed in the Chancery Court and that the chancellor had signed the November 18, 1985, order transferring the cause. On December 18, 1985, an agreed order was signed by counsel for the parties, by then Presiding Circuit Judge L.D. Pittman, setting the cause for trial in the Circuit Court of Covington County on May 27, 1986.
This cause came to trial on May 28, 1986, in Collins, Mississippi, Special Judge Robert McFarland presiding. The case was tried, resulting in a jury verdict finding that Vince was the father of Christopher Stewart Shows. A judgment adjudicating paternity wherein Vince was adjudged to be the father of the child was signed by Judge McFarland and filed June 7, 1986.

I. The Trial Court Unduly Limited the Defendant in Direct Examination of Witnesses Called by the Appellant.
Vince complains that the trial court was in error in refusing to allow him to use *1365 the term "going with" in an attempt to show that Nora had a sexual relationship with another man or other men and instructing the jury that the term was not to be considered as engaging in sexual relations. Vince repeatedly informed the court and the jury that the term "going with" when used by Nora in describing a relationship meant that she was having sexual relations with the one she was "going with." Vince believes that, "the witnesses and parties all seem to agree that from time to time the parties would describe their relationship as `going together' during that period of time when they were regularly engaged in sexual relations prior to the pregnancy."
Vince argues that he should have been allowed to testify as to what meaning the parties placed on these terms, citing M.R.E. § 701 in support of his argument:
If the witness is not testifying as an expert, his testimony in the form of opinions of inferences is limited to those opinions or inferences which are (a) rationally based on a perception of a witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.
Vince believes that this rule resolves all doubt that he should have been able to explain the meaning of the term "going with."
Additionally, Vince cites Moran v. State, 160 Miss. 598, 135 So. 209 (1931), which concerns this Court's position on taking judicial notice of certain words and phrases. Vince contends that the trial court should have taken judicial notice of the meaning of the phrase "going with" to mean sexual intercourse. In Administrators of the Tulane Educational Fund v. Duane Cooley, 462 So.2d 696 (Miss. 1984), this Court said:
A judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known within the state or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
Id. at 699. This view has been codified as Rule 201(b), M.R.E.
We find no evidence that "going with" means sexual intercourse in the general use of these words in this state. The meaning given to the words by Vince can and is the subject of reasonable dispute in this case. Although Vince was not allowed to make the assumption that Nora had sexual intercourse with other men when she used the term "going with," there is no question that this evidence was put before the jury. On direct examination, Vince was asked if during the meeting with Nora in May of 1984 they discussed the paternity of the child. Vince answered that they did and that he told Nora that he did not believe it was his child "because you have been sleeping around with guys." At this point, an objection was overruled and he repeated, "because of those guys you've been sleeping around with." Vince, therefore, got before the jury his alleged contentions that Nora was sexually active with other men. We find no merit in this assignment of error.

II. The Trial Court Erred in Permitting the Plaintiff to Show the Conduct of Relatives as Evidence of Paternity.
Vince complains that the trial court permitted Nora to show that Vince's parents were present and visited her during the delivery of the child whose paternity is in dispute. Over Vince's objections, Nora was also permitted to testify that Vince's brothers and sisters and other kindred visited and exhibited affection toward the child. This testimony, offered by Nora as well as her mother, was properly objected to and overruled by the court.
We find that Nora's testimony as to Vince's family's actions toward the minor child amounts to inadmissible hearsay. The comment to M.R.E. 801(a) dictates "that some non-verbal conduct is tantamount to a verbal assertion." Nora's testimony concerning the family's affection for Christopher Stewart Shows is no more than a non-verbal assertion showing the family's belief in the paternity of the child. With this testimony Nora made an attempt to bind Vince by the actions of a third party, his family.
Although the admission of Nora's testimony was error, we find that the lower *1366 court's action in admitting this evidence was not reversible error under the facts in this case. More specifically, Vince's rights were not violated by the admission of Nora's testimony. To the contrary, Vince's mother, Mrs. Sadie Thornton, was placed on the witness stand by Vince and allowed to clarify the actions of Vince's family in connection with the care and affection shown for Christopher Stewart Shows. Mrs. Thornton testified:
Q: You're Ms. Sadie Thornton?
A: Yes, sir.
Q: And you are the mother of the Defendant 
A: Right.
Q: All right. And you are familiar with the fact that Ms. Shows gave birth to a male child in September of 1984, which is the subject of the action of this suit here?
A: Yes, sir.
Q: What is that child's name?
A: Christopher.
Q: Where did you first see the child?
A: I was with her when she had the baby.
Q: You were at the hospital in Jackson?
A: Right.
Q: And did you visit her from time to time after that?
A: Right.
Q: And has the child visited in your home?
A: Many times.
Q: And have you held the child and bought things for the child?
A: Yes, sir.
Q: Tell us why you did that, Ms. Thornton, and why you do it until this day?
A: I thought that my son was the father up until I learned that 
Q: Just a minute. You thought at one time that 
A: At one time, I thought the child belonged to Vince.
Q: Okay, but what I'm asking you  well, the question I asked you was why do you do it up until this date?
A: Well, I love him. That didn't cause me not to love the child just because I found out  I feel different.
Mrs. Thornton's testimony obviously clarifies that the family's actions were based on a mistaken belief that the child belonged to Vince. We hold that the testimony and clarification by Vince's mother prevents a miscarriage of justice by dispelling the inferences created by Nora Shows' testimony. It is well established in this state that "when the appellant himself introduces evidence on the same proposition" he is in no position to complain of the admission of similar testimony by the other party. See Deposit Guaranty Bank & Trust Co. v. Nelson, 54 So.2d 476 (Miss. 1951). Therefore, we find that Vince has waived his right to assign this issue on appeal.

CONCLUSION
We find that it was error for the lower court to admit Nora Show's evidence concerning the conduct of Vince's relatives with regard to the child, Christopher Stewart Shows. However, we are also of the belief that this error was waived when Vince offered similar testimony by his mother, Mrs. Sadie Thornton. Vince called his mother to the stand and, by her testimony, presented to the jury an explanation of Ms. Shows' testimony.
We find that the evidence is overwhelming that Vince is the father of Christopher Stewart Shows. The admission of the evidence as to the actions of the third parties was error, but not reversible error. Accordingly, the final judgment of the Circuit Court of Covington County, Mississippi, dated May 19, 1986, is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, ANDERSON, PITTMAN and ZUCCARO, JJ., concur.
SULLIVAN, J., not participating.