625 So.2d 782 (1993)
Ary Kay JERNIGAN,
v.
Romie JERNIGAN.
No. 92-CA-0349.
Supreme Court of Mississippi.
October 7, 1993.
C. Emanuel Smith, Tupelo, for appellant.
Michael D. Jonas, Aberdeen, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the court:
Ary Kay ("Kay") Jernigan and Romie Jernigan were divorced in 1985 after approximately seventeen years of marriage. Kay Jernigan was awarded the sole use and exclusive possession of the home owned by the parties, and two acres of land adjoining the home, until the parties' youngest child reached eighteen years of age. Subsequent to the divorce, Kay and Romie resumed cohabitation until June, 1991.
*783 Kay continued to live in the house until it was destroyed by fire in August, 1991. The house and contents were insured. The property, however, was titled solely in Romie's name. Full payment of the insurance proceeds was made to Romie for both the house and its contents.
Kay appeals the Chancellor's findings that she was entitled to past due child support and to one-half of the insurance proceeds attributable to the loss of the household goods, but not to any of the insurance proceeds from the destruction of the dwelling. Kay also appeals the finding that she does not have any legal or equitable interest in the house and two acres that had previously served as the parties' marital domicile. Kay sought an amendment to the judgment, but the Chancellor denied the motion.
Kay appeals assigning as error:
WHETHER THE CHANCELLOR COMMITTED REVERSIBLE ERROR BY FAILING TO DECREE AN EQUITABLE INTEREST IN FAVOR OF A SPOUSE WHO CONTRIBUTED TO THE JOINT ACCUMULATION OF REAL PROPERTY TITLED SOLELY IN THE NAME OF THE OTHER SPOUSE?

STATEMENT OF THE FACTS
The Jernigans were married January 21, 1968. The Jernigans have two children, Rueben, born in 1966, and Levert, born in 1968. Kay and Romie separated in December, 1984. At that time, Kay sought a divorce on the ground of habitual cruel and inhuman treatment. The Chancery Court of Monroe County, Mississippi issued a Final Decree of Divorce on May 22, 1985. In that decree, Kay was granted a divorce; awarded custody of the two children; child support in the amount of $150.00 a month for the youngest child, Levert; $50.00 a month in alimony; sole use and exclusive possession of the home owned by the parties, as well as the two adjoining acres; and sole use and exclusive possession of all household furnishings and appliances. The chancellor noted that Romie had not answered the complaint, and did not appear in court.
Romie filed a Motion to Set Aside Final Decree of Divorce on May 28, 1985, alleging that Kay had assured him that she would not go through with the divorce. The chancellor issued an Amended Decree of Divorce. The amended decree relieved Romie of the obligation to pay Kay alimony; the rest of the decree is the same as the first decree.
The Jernigans resumed cohabitation sometime in the latter part of 1985, and continued to live together until June, 1991. Kay continued to live in the house; Romie moved into a trailer that they owned. On August 11, 1991, the parties' house burned down. The house had been titled solely in Romie's name. The insurance proceeds for the house, and the personal property destroyed by the fire, were paid to Romie. The proceeds totalled $43,000.00, and were paid in three different checks.[1] Kay did not receive any of the proceeds, even though one of the checks was made payable to both Kay and Romie Jernigan.
In October, 1991, Kay filed a Complaint for Contempt, Modification and Injunctive Relief, alleging that Romie was in arrears on payment of child support. At the same time, Kay also filed a Motion for Modification of Final Judgment and Injunctive Relief, alleging that the loss of the house in the fire was a substantial material change in Kay's circumstances, thereby warranting a modification of the final judgment. Also, Kay sought to enjoin Romie from wasting the insurance proceeds.
A hearing was held on November 22, 1991. During the hearing, Romie stated that his wife did not work prior to marriage, but began shortly after they were married. The land upon which the marital home was built was deeded by warranty deed to Romie by his father, aunts and uncles. The property was conveyed five months after the Jernigans were married. Romie borrowed money from the bank to build the house. He testified that his father signed the note, and believed that Kay signed it as well. The mortgage on the house was paid in full. *784 Romie alleged that he made all the mortgage payments and that Kay did not contribute anything. Romie claims that he paid all the taxes, insurance, maintenance, as well as the mortgage payments on the house.
The Jernigans had a joint checking account in the sense that they both contributed funds; however, the account was in Romie's name alone. Kay stated at the hearing that when they married, Romie already had a checking account, and as he was "the man of the house," she never pushed the issue. Kay maintained that she and Romie contributed evenly to the "joint" account, and that they paid the bills together, including the time they cohabitated after their divorce.
Kay stated that both before and after the divorce she drew money out of her savings account to have additions built on the house, and to have portions of the existing house remodeled. Kay said that she paid for the materials, and Romie did the work. Kay said that Romie moved out in June, 1991, into a mobile home that they owned. The house burned down in August, 1991. She filed the claim with the insurance company, and Romie received the proceeds. Kay stated that she lost everything in the fire, and that she now lived with her mother. She said she had received no money from Romie.
The Chancellor found that Romie was indebted to Kay for the past due child support payments in the amount of $1,650.00.[2] Furthermore, Kay was entitled to one-half of the insurance proceeds for the contents of the house. However, the chancellor found that Romie was the sole and exclusive fee owner of the lot and the house that was destroyed by fire, thereby entitling Romie to all of the insurance proceeds. Kay moved to amend the final decree, which was denied by the chancellor on April 8, 1992.

DISCUSSION OF THE ISSUE

WHETHER THE CHANCELLOR COMMITTED REVERSIBLE ERROR BY FAILING TO DECREE AN EQUITABLE INTEREST IN FAVOR OF A SPOUSE WHO CONTRIBUTED TO THE JOINT ACCUMULATION OF REAL PROPERTY TITLED SOLELY IN THE NAME OF THE OTHER SPOUSE?
Our scope of review in domestic relations matters is limited. Crow v. Crow, 622 So.2d 1226 (Miss. 1993). "Findings of a Chancellor will not be disturbed or set aside by this Court on appeal unless we are of the opinion the decision made by the trial court was manifestly wrong and not supported by substantial, credible evidence, [citations omitted], or unless an erroneous legal standard was applied." Snow Lake Shores Property Owners Corp. v. Smith, 610 So.2d 357, 360 (Miss. 1992).
Kay Jernigan contends that the fact that her name does not appear on the deed to the property does not negate her interest in the property, especially given that the house and property were acquired during the course of the marriage. She also argues that both the original and amended divorce decrees refer to the house and property as "the home owned by the parties." Kay further contends that the Chancellor awarded her "the sole use and exclusive possession of the home owned by the parties ... until the parties' youngest child reaches the age of eighteen." The Chancellor did not state what was to happen to the property upon that event occurring.
Romie contends that Kay only asked for "permanent use and exclusive possession" of the property; she did not ask to divest Romie of any part of his interest in the home. Romie also argues that there was sufficient evidence presented to support the Chancellor's refusal to divest him of any interest in the property.
In the original divorce action, Kay did ask for the "permanent use and exclusive possession of" the marital home and thirty acres of land. The final decree awarded her "sole use and exclusive possession of the home owned by the parties ..., as well two (2) acres of land adjoining said home until the parties' youngest child reaches the age of eighteen *785 (18) years." Kay did not appeal that final judgment.
Romie testified that he thought Kay had co-signed the loan for the funds that were used to build the house. He also testified that she worked throughout their marriage. There was a joint checking account into which both Jernigans placed funds for the payment of bills. If the chancellor had been unwilling to divest Romie of some part of his interest in the house and property, he should have made some other equitable provision for Kay's contribution throughout the marriage toward the accumulation of the property.
This Court has stated that although the general rule is that the chancery court cannot divest a spouse of title to property, there are exceptions. Watts v. Watts, 466 So.2d 889 (Miss. 1985); but see Draper v. Draper, 627 So.2d 302 (Miss. 1993) wherein the general rule has now been reversed to permit such divestitures. However, a spouse is not automatically entitled to an equal division of jointly-accumulated properties. The matter is left to the discretion of the court. Brown v. Brown, 574 So.2d 688, 691 (Miss. 1990).
At the very least, Kay is entitled to equitable relief for the six years she shared the house with Romie. Kay testified that both before and after the divorce she expended funds from her savings account to build additions to the house, and to remodel portions of the existing structure.
In Pickens v. Pickens, 490 So.2d 872 (Miss. 1986), the parties were married in 1948, divorced in 1962, and resumed cohabitation in 1963. They continued to live together until 1983. The wife filed a complaint demanding an equitable division of property accumulated during the time they lived together. Id. at 873. Among the property the wife sought to be distributed was the house and lot which had been occupied as their family home, which was titled solely in the husband's name. Id. at 874. Both parties worked at jobs outside the home. The husband claimed that all property at issue had been acquired with his money and that the wife made no contribution whatsoever.
The Court upheld the chancellor's equitable distribution of the property at issue. The Court stated that although the parties were not married, there was at least a partnership through which property was accumulated by the joint efforts of both parties, and an equitable division of the property was in order. Id. at 875-876.
Based on the foregoing, we reverse and remand this cause to the chancery court for an equitable distribution of the real property accumulated through the joint efforts of Kay and Romie Jernigan, and/or of the insurance proceeds resulting from the loss or damages of said real property.
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THE OPINION OF THIS COURT.
HAWKINS, C.J., and PRATHER, P.J., SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and SMITH, J.
McRAE, Justice, dissenting:
I disagree with the majority's decision to give Kay Jernigan a "third bite of the apple." Any claim for an equitable division of marital property should have been made seven years previously when the final divorce decree was entered in 1985. The doctrines of res judicata and equitable estoppel preclude her now from raising the issue of equitable division. Moreover, I disagree with the majority's finding that she was entitled to receive half or any other part of the insurance proceeds paid by Southern Farm Bureau for the loss of the house. There is no evidence in the record to substantiate her assertions of an ownership interest in the house, a financial contribution to improvements made to it either before or after the divorce, or a contract interest in the insurance policy or its proceeds. It cannot be said, therefore, that the chancellor was manifestly wrong or that his decision was not supported by the evidence. Accordingly, I dissent.
The May 22, 1985, divorce decree gave Kay only a possessory interest in the house and adjoining two acres of land until the *786 couple's younger son, Levert, reached the age of eighteen. Levert Jernigan celebrated his eighteenth birthday on September 18, 1986, one year and four months after the final decree was entered. On that date, Kay's legal interest in the property ceased. She did not petition the court for modification of the final decree at that time nor did her resumed cohabitation with Romie change her legal status with regard to the property. Instead, it could be argued that Kay owes her former husband rent for the time she lived in the house after September, 1986.
Kay testified that she took money from her savings account to pay for the addition of a living room and other improvements made to the house both before and after the couple was divorced. However, the record provides no accounting or documentation of expenditures made or when they were made. She is estopped by the terms of the final decree of divorce, to which she agreed, from seeking any claims for her pre-1985 expenditures. The burden is on her to show that she is entitled to an equitable lien against the proceeds for post-1985 expenditures. She has not met that burden.
Finally, the record does not reveal whether Kay was named on the insurance policy and was thus a party to the contract. It appears that only Romie was named on the policy since Southern Farm Bureau issued one check solely to Romie for the house and living expenses and another jointly to Romie and Kay for the contents. We do not have a copy of the insurance policy before us; however, generally a non-owner's loss of personal possessions kept in the insured premises will be covered to the maximum allowable under the contents policy. It was Kay's burden to prove that she was a party to the insurance contract. Again, she has failed to meet that burden.
The majority treats this lawsuit as if it were a motion to reconsider. However, Kay Jernigan is seven years too late. The case was again heard by the same chancellor who entered the decree of divorce in 1985. Based on the evidence before him, he correctly denied the relief she sought. Because Kay is not entitled to a third bite of the apple, I dissent.
DAN M. LEE, P.J., and SMITH, J., join this opinion.
NOTES
[1] The insurance proceeds were paid in three different checks: $30,000.00 for the dwelling; $12,000.00 for the contents of the house; and an additional $1000.00.
[2] Kay had contended in her complaint that Romie was $11,400.00 in arrears in child support, for the months of June, 1985 through October, 1991. Levert turned eighteen on September 18, 1986.