# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CA-00131-SCT

***ARY KAY JERNIGAN A/K/A ARY KAY COX
JERNIGAN***

***v.***

***ROMIE JERNIGAN***

| | |
|---|---|
| DATE OF JUDGMENT: | 01/13/94 |
| TRIAL JUDGE: | HON. JOHN C. ROSS JR. |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | C. EMANUEL SMITH |
| ATTORNEY FOR APPELLEE: | MICHAEL DAVIS JONAS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 6/19/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/10/97 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This case was remanded to the chancery court once before with instructions to determine Mrs. Jernigan's equitable share of $30,000 in insurance proceeds that Mr. Jernigan received following the destruction by fire of the couple's marital home. While that appeal was pending, the couple decided to rebuild the home with the insurance money as well as additional funds contributed by each party. On remand, the chancellor simply decreed that the wife be given back the additional funds that she had contributed to the reconstruction. Because the chancellor erred by not determining the extent of Mrs. Jernigan's equitable share in the insurance proceeds, we are compelled to reverse the determination and remand the case again.

## I.

¶2. This case is on appeal for the second time from the Chancery Court of Monroe County, Mississippi. The underlying facts are largely undisputed and are laid out in this Court's original decision, ***Jernigan v. Jernigan,*** 625 So. 2d 782, 783-84 (Miss. 1993). They are summarized here, along with subsequent events.

¶3. Kay and Romie Jernigan were married in 1968 and divorced in May, 1985. According to the terms of the Amended Decree of Divorce, Kay (hereinafter "Mrs. Jernigan") was awarded a divorce, along with custody of the children, child support for the youngest child, and sole and exclusive possession of the home, land and household furnishings until the parties' youngest child reached the age of eighteen. During the latter part of 1985 the parties resumed cohabitation and continued to live together until June, 1991, when Mr. Jernigan moved out. In August of the same year, the parties' house burned down. The insurance proceeds totaled $43,000.[1] The house was titled solely in Mr. Jernigan's name, and even though both of the parties' names were on one of the checks, he shared none of the money with Mrs. Jernigan.

¶4. In October, 1991, Mrs. Jernigan filed a motion to modify the divorce decree and to enjoin Mr. Jernigan from wasting the insurance proceeds. After holding a hearing, the chancellor found that she was entitled to past due child support and to one-half (1/2) of the insurance proceeds for the contents of the house. However, the chancellor awarded the entire $30,000 that had been received for the destruction of the dwelling to Mr. Jernigan, as the sole and exclusive fee owner of the lot and house.

¶5. Because the chancellor had applied the overruled "whose name is on the title" method of property division to the Jernigans' property, this Court reversed and remanded to the chancery court "for an equitable distribution of the real property accumulated through the joint efforts of Kay and Romie Jernigan, and/or of the insurance proceeds resulting from the loss or damages of said real property." *Jernigan,* 625 So. 2d at 785.

¶6. The chancellor's task pursuant to this remand was complicated by the Jernigans' decision during the course of these proceedings to build a new home on the property where the old house had stood. Both Mr. and Mrs. Jernigan contributed funds to the rebuilding of the new house. Mr. Jernigan testified that his contributions were a combination of his savings, the $30,000 insurance settlement and a $10,000 loan he took out at approximately the same time. Mrs. Jernigan testified that she contributed a total of $12,000. Mr. Jernigan performed the actual construction with assistance from the couple's two sons. To further confuse the matter, the land on which the houses were built was discovered to have a flawed title. Mr. Jernigan, who was originally thought to be the sole and exclusive fee owner of the lot, in fact owns only a 2/3 interest in the land.

¶7. On remand, the chancery court awarded Mrs. Jernigan an equitable lien against the marital homestead of $12,000, which reflected her contributions to the reconstruction. She now brings this appeal contending that under a correct application of the law she is entitled to one-half (1/2) of the rebuilt home.

## II.

¶8. The scope of review in domestic relations matters is limited. A chancellor's decision will not be reversed if the finding of fact is supported by substantial credible evidence in the record. *Draper v. Draper,* 627 So. 2d 302, 304 (Miss. 1993). "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Id.*; *Crow v. Crow,* 622 So. 2d 1226, 1228 (Miss. 1993); *Bell v. Parker,* 563 So. 2d 594, 596-97 (Miss. 1990).

¶9. The chancellor's decree reflects his belief that Mrs. Jernigan indeed contributed $3,000 from her

savings, $1,000 from her Christmas Club Account, and $8,000 of the insurance proceeds she received as a result of fire loss to the original household goods. These amounts comprise the $12,000 which the chancellor awarded to her.

¶10. In essence, Mrs. Jernigan received a refund of the *additional* money she contributed to the construction of the new house. This left unanswered the question of whether she was entitled to an equitable share in the insurance proceeds paid to Mr. Jernigan after the destruction of the old house, which were also used to finance the reconstruction. Her equitable interest in *those* funds was the issue which we remanded to the chancery court for determination. ***Jernigan,*** 625 So. 2d at 785.[(2)]

¶11. Stated differently, even if Mrs. Jernigan had not contributed her $12,000 to the reconstruction, she would still be entitled to some equitable share in the rebuilt house. The insurance proceeds which partially financed the reconstruction represented Mrs. Jernigan's equitable interest in the couple's jointly-accumulated real property. Some share of the insurance proceeds belonged to her, and to this extent she has an equitable interest in the new house in addition to the cash contributions she made to the rebuilding.

¶12. We are therefore compelled to reverse the chancery court's order and remand this cause again for a determination of Mrs. Jernigan's equitable interest in the real property that was accumulated through the joint efforts of the parties while they were married, and/or her interest in the insurance proceeds that were paid following the loss of that property through fire. In making its determination of Mrs. Jernigan's interest, the chancery court should apply the factors enunciated in ***Ferguson v. Ferguson,*** 639 So. 2d 921, 928 (Miss. 1994).

¶13. While it is true that a spouse is not automatically entitled to an equal share of jointly accumulated properties, ***Jernigan,*** 625 So. 2d at 785; *see also* ***Ferguson,*** 639 So. 2d at 927; ***Draper,*** 627 So. 2d at 305; ***Brown v. Brown,*** 574 So. 2d 688, 691 (Miss. 1990), the record reflects that Mrs. Jernigan made substantial contributions to the accumulation of real property during the marriage and during the six years the couple lived together after the divorce. Mrs. Jernigan worked and deposited her income into a joint banking account from which the couple paid bills associated with the marital partnership. She used her money to expand and remodel the old house. Mrs. Jernigan also took care of most of the expenses associated with the children.

¶14. However, Mrs. Jernigan is not necessarily entitled to more than the amount already awarded to her by the chancellor's decree, and could conceivably be entitled to less. Under ***Ferguson***, she may not have been due a full "refund" of the additional $12,000 she contributed to the reconstruction of the present house, as should be determined by its market value. Mr. Jernigan does not presently assert a specific valuation of the house, but argues only that his original estimate of $65,000 during the hearing may have been an overstatement because of his "personal pride." He concedes that the couple's decision to rebuild the house was a "poor investment," inasmuch as the house was not professionally constructed. Moreover, the lot on which it stands has a flawed title. For these reasons, the market value of the rebuilt house and the property is a key factor in the fair determination of Mrs. Jernigan's equitable share. "Property division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division." ***Ferguson,*** 639 So. 2d at 929. The chancery court should give due consideration to these factual nuances.

¶15. The chancery court also should consider that Mr. Jernigan quit his job and invested his own time and labor in rebuilding the home. Additionally, since property acquired through gift, devise or descent is generally to be treated as separate property, the court should also be mindful of the fact that the 2/3 title to the land itself was deeded exclusively to Mr. Jernigan by his relatives. *Davis v. Davis,* 638 So. 2d 1288, 1294 (Miss. 1994); *Carrow v. Carrow,* 642 So. 2d 901, 906 (Miss. 1994).

¶16. Since the chancellor made no findings which would have informed this Court of the methods used in determining Mrs. Jernigan's equitable share in the couple's jointly-accumulated property, we are required to remand her cause for further consideration. She may well be entitled to additional consideration of her contributions to the couple's accumulation of real property throughout the marriage (beyond the $12,000 that she has already been awarded), and she is definitely entitled to consideration of her contributions made during the couple's post-divorce cohabitation. *See Jernigan,* 625 So. 2d at 785; *see also Pickens v. Pickens*, 490 So. 2d 872 (Miss. 1986) (former spouses may form partnership for the joint accumulation of assets). These contributions are represented by her equitable share, to be determined on remand, of the $30,000 insurance proceeds that Mr. Jernigan received following the destruction of the original dwelling, and which was used to build the new home. Mrs. Jernigan's share of this money should then be discounted by the factors discussed above (including the market value of the present dwelling and the extent to which Mr. Jernigan has actual title to the land), and the $12,000 judgment she has already received pursuant to the first decree.

**¶17. REVERSED AND REMANDED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J. MILLS, J., NOT PARTICIPATING.**


McRAE, JUSTICE, DISSENTING:


**¶18.** This Court's decision in *Jernigan v. Jernigan*, 625 So. 2d 782 (Miss. 1993) incorrectly gave Kay Jernigan a "third bite of the apple," allowing her to seek the equitable distribution of assets stemming from property acquired during the marriage seven years after a divorce decree was entered. Her claims of an ownership interest in the former marital dwelling, the rights to insurance proceeds paid by Southern Farm Bureau after it burned, and an interest in the house as it was rebuilt during a period of post-divorce cohabitation are no less barred by the doctrines of res judicata and equitable estoppel now than they were in 1993. *See Jernigan*, 625 So. 2d at 785 (McRae, J., dissenting). Today's decision, therefore, merely gives her yet another bite at the apple, with which I disagree.

¶19. Under the terms of the divorce decree, Kay's legal interest in the property at issue ended when the couple's younger son turned eighteen:

> The May 22, 1985, divorce decree gave Kay only a possessory interest in the house and adjoining two acres of land until the couple's younger son, Levert, reached the age of eighteen. Levert Jernigan celebrated his eighteenth birthday on September 18, 1986, one year and four

months after the final decree was entered. On that date, Kay's legal interest in the property ceased. She did not petition the court for modification of the final decree at that time nor did her resumed cohabitation with Romie change her legal status with regard to the property. Instead, it could be argued that Kay owes her former husband rent for the time she lived in the house after September, 1986.

*Jernigan,* 625 So. 2d at 786. Thus, the matter of Kay's entitlement to any monetary interest in the marital dwelling or proceeds derived therefrom long ago was resolved. Having nothing more than a temporary possessory interest in the property, the chancellor properly declined to address Kay's "equitable interest" in the $30,000 dwelling insurance proceeds that Romie received. We cannot, therefore, chide the chancellor for "ignoring" the issue.

¶20. The majority, however, finds that in addition to the $12,000 awarded to Kay for monies she contributed to the reconstruction of the house, which included some $8,000 in contents insurance proceeds she received, she also may be entitled to a share of the $30,000 dwelling insurance proceeds paid to Romie after the original house burned in 1991, which subsequently were applied to the rebuilding. Operating on the mistaken presumption that Kay had an equitable interest in the property, the majority notes that she made substantial contributions to the accumulation of real property during the marriage *and* during the six years that the couple lived together after the divorce. While assets accumulated by the joint efforts of a couple living together without the benefit of marriage may be subject to equitable distribution, *Pickens v. Pickens,* 490 So. 2d 872, 875 (Miss. 1986), the property interest which Kay seeks to share were acquired during the marriage. In fact, it is her share in the marital assets that the parties have been litigating and relitigating, despite the terms of the 1985 divorce decree terminating Kay's interest in the marital dwelling when the couple's younger son turned eighteen. Thus, her contributions subsequent to the divorce are not material to any division of *marital* property and should not be considered by the chancellor. To find otherwise unduly rewards her for waiting many years after the divorce to address matters that should have been raised at the time of the final decree.

¶21. In making an equitable division of property, the chancellor is not required to divide the property equally. *Love v. Love,* 687 So. 2d 1229, 1231-1232 (Miss. 1997); *Trovato v. Trovato*, 649 So.2d 815, 817-18 (Miss.1995); *Davis v. Davis*, 638 So.2d 1288, 1292 (Miss.1994). Fairness is the "prevailing guide" in dividing marital property. *Ferguson v. Ferguson,* 639 So. 2d at 921, 929 (Miss. 1994). This Court will not disturb the chancellor's findings unless they are manifestly wrong. *Malone v. Odom*, 657 So. 2d 1112, 1116 (Miss. 1995). Considering the facts of the case, I would not find the chancellor in error for limiting Kay's equitable share to the $12,000 she invested in rebuilding the house.

LEE, C.J., JOINS THIS OPINION.


1. The proceeds were paid in three checks: $30,000 for the dwelling; $12,000 for the contents of the house; and an additional $1,000. *See* *Jernigan,* 625 So. 2d at 783, n.1.

2. The dissent by Justice McRae, and joined by Chief Justice Dan Lee, (both of whom dissented in

***Jernigan I***) appears to miss the point in this case. The chancellor made no explicit finding about Mrs. Jernigan's interest in the distribution of the insurance proceeds. While that court determined that Mrs. Jernigan was entitled to $12,000, it did not determine whether those monies represented her equitable portion of the $30,000 in insurance proceeds. The court appears to have further ignored the fact that the $12,000 that Mrs. Jernigan contributed to the rebuilding of the Jernigans' home was an *additional*contribution on top of her equitable interest in the insurance proceeds, which were also used to rebuild the home. If the court did conduct any analysis of these considerations, the record does not so reflect; nor does the record reflect a basis in factual findings for this analysis. Thus, it appears that the dissenters contest not so much what we hold here as what we held in ***Jernigan I***.