IN THE SUPREME COURT OF MISSISSIPPI
NO. 96-CA-00122-SCT

*BETTY H. SPALDING*

*v.*

*WILLIAM H. SPALDING*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/10/96 |
| TRIAL JUDGE: | HON. THOMAS W. TEEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DAVID P. OLIVER |
| ATTORNEY FOR APPELLEE: | EDWARD F. DONOVAN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 3/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/7/97 |

**BEFORE DAN LEE, C.J., BANKS AND MILLS, JJ.**

**DAN LEE, CHIEF JUSTICE, FOR THE COURT:**

¶1. Betty Spalding has appealed from a decision of the Chancery Court of Harrison County granting her an increase in alimony, but allowing Social Security benefits derived from and based upon her husband's income history, both during and after their marriage, as credit for alimony and arrearage. The chancery court also denied Betty Spalding's request for attorney's fees and costs, and refused to find her husband, William Spalding, in contempt for nonpayment of alimony. Aggrieved by the decision of the chancery court, Betty Spalding assigns the following as error:

> **1. THE LOWER COURT ERRED IN APPLYING SOCIAL SECURITY BENEFITS AS AN OFFSET AGAINST WILLIAM H. SPALDING'S ALIMONY OBLIGATIONS; AND**
>
> **2. THE LOWER COURT ERRED IN NOT GRANTING THE RELIEF REQUESTED BY BETTY H. SPALDING; THAT IS, THE ENFORCEMENT OF THE COUNTY OF LOS ANGELES DIVORCE DECREE AND A JUDGMENT THEREAFTER FOR ARREARAGES, ATTORNEY FEES AND COSTS.**

¶2. After a careful examination of the record and briefs in this matter, this Court concludes that the

chancery court did not err in granting credit for alimony and arrearage based on Social Security benefits paid (and to be paid) to Betty Spalding, which were partially attributable to William Spalding's history of income contribution to the Social Security system, and did not err in the denial of alimony arrearage, attorney's fees, and costs. The chancery court applied the correct legal standard to this case, did not abuse its discretion, and was not manifestly wrong or clearly erroneous in its decision.

## STATEMENT OF THE FACTS

¶3. William and Betty Spalding were divorced by a California judgment entered in 1972, with a properly approved Property Settlement Agreement and a later Amendment and Supplement to it. Betty Spalding was awarded $250 per month alimony. No further action was taken by the parties prior to the filing of the current complaint by Betty Spalding on November 14, 1994.

¶4. Betty Spalding is a 72-year-old former music teacher and church music director. William and Betty were married for 25 years and have three children, ranging in ages from 43 to 47 years of age. Except for her eyes, Betty is in good health. She lost an eye in 1971 and has suffered significant impairment in the other eye. She is legally blind. Betty's reported gross income is $892 per month with expenses of $1,015. She has current assets of approximately $100,000. Half of Betty's assets are in her house and the other half in investments. In 1994, Betty discontinued working due to her vision problems and now lives in Grand Rapids, Michigan.

¶5. William Spalding is 73 years old. He is a retired engineer and has lived in Harrison County, Mississippi, for the past 15 years. William is remarried and is in apparent good health. He has a current monthly income of $1,467 (from retirement sources) and expenses of $1,645. William has current assets of approximately $50,000.

¶6. Following the divorce, Betty sold the California home. The Amendment and Supplemental Property Settlement between Betty and William stated that if the home was sold for more than $30,000, they would split equally any excess over that amount. Betty sold the house, kept all of the money and used it to buy another house, which she later sold at a $60,000 profit. Betty insists that William executed a quitclaim deed and by such gave up his equity in their home, not mentioning it again until this action was filed. William contends that he did not relinquish that claim. In 1979, some four years after the sale of the house, William admittedly stopped making alimony payments, insisting that Betty had failed to comply with the divorce decree. Neither party ratified or litigated their position by court action.

¶7. In March, 1980, Betty's attorney sent a demand letter to William, requesting payment of the three months' back alimony. William responded with a letter indicating his intention not to pay the arrearage or any further alimony. Some testimony indicated that Betty did not know of William's whereabouts from 1980 to 1994. Betty's California attorney did have William's address and Betty had communication with her children who had William's address. When Betty did ask for William's address in 1994, she got it. According to Betty's testimony, she discussed the case with attorneys in California, Michigan, and Massachusetts.

¶8. In April, 1987, Betty began receiving Social Security benefits. Social Security documents and the testimony of Social Security agent Terry Dill indicated that Betty had received more than $250 each

month in benefits directly attributable to William's income contribution record. At present, she is getting $360 per month in Social Security benefits derived from William, based upon his income record both during the marriage and after the divorce.

¶9. On November 14, 1994, Betty filed a Complaint in Harrison County, seeking domestication of the 1972 California divorce decree and requesting the incarceration of William for contempt, or alternatively, an award of $64,800 including pre-judgment interest, interest, attorney's fees and all costs. In her Amended Complaint, filed October 20, 1995, Betty added a request for an upward modification of monthly alimony due to a material change in her circumstances. William answered Betty's Complaint and the Amended Complaint, asserting a number of defenses to each. As one of his defenses, William asserted that any alimony obligation to Betty should be offset by the Social Security benefits which Betty received that were directly attributable to William's work and income history. Among William's other asserted defenses were laches, slumbering on rights, and the three-year statute of limitations established by Miss. Code Ann. § 15-1-45. In his Answer to the Amended Complaint, William made a contingent motion for a downward modification of alimony payments to Betty, premised upon a material and substantial change in circumstances, specifically William's reduced income and Betty's receipt of derivative Social Security benefits.

¶10. The chancellor domesticated the California divorce decree of William and Betty Spalding and held that both parties had sat on important rights: William in not asserting his right to the decreed equity in the California home, and Betty in waiting some fourteen years to assert her alimony rights. The chancellor explained that William's rights were barred because of laches and the statute of limitations. Concerning Betty's rights to alimony arrearage, the chancellor stated that the request for any payment due before November 17, 1987, would be barred under Miss. Code Ann. § 15-1-43, which mandates a seven-year statute of limitations (not the default three-year statute of limitations sought by William).

¶11. Finding a material change in circumstances, the chancellor granted Betty an increase in monthly alimony to $450, minus any credits for derivative Social Security payments from William. The chancellor ruled that William was not in contempt of court due to a combination of laches, the statute of limitations, and credit for derivative Social Security benefits received by Betty. Betty was also denied attorney's fees and costs.

¶12. Aggrieved by the decision of the chancery court, Betty has appealed the chancellor's ruling, asserting that she is entitled to the $450 monthly alimony without the credit for the derivative Social Security benefits being deducted and requesting that the lower court's denial of attorney's fees and costs be reversed.

## STANDARD OF REVIEW

¶13. Our review of a chancellor's findings is well settled. This Court's scope of review in domestic relations matters is limited. *Crow v. Crow*, 622 So. 2d 1226, 1228 (Miss. 1993). "'Findings of a Chancellor will not be disturbed or set aside by this Court on appeal unless we are of the opinion the decision made by the trial court was manifestly wrong and not supported by substantial, credible evidence, [citations omitted], or unless an erroneous legal standard was applied.' *Snow Lake Shores Property Owners Corp. v. Smith*, 610 So. 2d 357, 360 (Miss. 1992)." *Pittman v. Pittman*, 652 So. 2d 1105, 1108 (Miss. 1995) (quoting *Jernigan v. Jernigan*, 625 So. 2d 782, 784 (Miss. 1993)).

**DISCUSSION OF THE LAW**

**THE LOWER COURT ERRED IN APPLYING SOCIAL SECURITY BENEFITS AS AN OFFSET AGAINST WILLIAM H. SPALDING'S ALIMONY OBLIGATIONS**.

¶14. In ruling that the use of Social Security payments may be an alternative source of satisfying alimony obligations, the chancellor relied upon this Court's earlier decisions of *Mooneyham v. Mooneyham*, 420 So. 2d 1072 (Miss. 1982), and *Bradley v. Holmes*, 561 So. 2d 1034 (Miss. 1990). In *Mooneyham*, this Court weighed decisions from a number of other jurisdictions and held that Social Security payments derivative from the child support payor should be credited against child support. The Court cited with approval the Georgia case of *Horton v. Horton*, 132 S.E.2d 200 (Ga. 1963), which stated the basic policy:

> Social Security disability payments represent money which an employee has earned during his employment and also that which his employer had paid for his benefit into a common trust fund under the Social Security Act. 42 U.S.C. § 301, et seq. These payments are for the purpose of replacing income lost because of the employee's inability to work upon becoming disabled. Thus, these payments substitute for income. Since the amount of alimony required to be paid is determined largely by income, we see no reason why, in discharging the obligation to pay the alimony, Social Security disability benefits should not be credited.

*Mooneyham*, 420 So. 2d at 1074. This Court stated that the decisions considered from other jurisdictions "appear to be unanimous in holding the social security payments to the minor . . . should be credited on the amount of support ordered by the court." *Id.* at 1073.

¶15. Eight years later, this Court followed the logic and holding of *Mooneyham* in deciding *Bradley*. *Bradley* held that a retired father's child support commitment would be credited for Social Security payments the minor child was eligible to receive premised upon the father's income record, even though the child's mother chose to receive Social Security benefits based on the income history of the child's retired stepfather. *Bradley*, 561 So. 2d at 1035-36. This Court stated that "[e]quity suggests that child support obligations are to be off-set, not only to the extent of payments actually received under the Social Security Act, but also for payments the child was entitled to receive, based on the parent's retirement." *Bradley*, 561 So. 2d at 1036 (citation omitted).

¶16. This Court's holdings in *Mooneyham* and *Bradley* aligned Mississippi with the majority of jurisdictions which have examined this issue. *See Pontbriand v. Pontbriand*, 622 A.2d 482, 484 (R.I. 1993), which stated that the "overwhelming majority of states that have considered this issue allow a credit for Social Security benefits paid to dependent children."

¶17. The issue raised here on appeal has not been previously presented to this Court. However, in the cases of *Frazier v. Frazier*, 455 So. 2d 883 (Ala. Civ. App. 1984), and *Brewer v. Brewer*, 613 So. 2d 1292 (Ala. Civ. App. 1992), Alabama has considered this issue and extended the principle of derivative Social Security benefits satisfying child support obligations to cases involving alimony claims. In *Frazier*, the Alabama Court of Civil Appeals held that the trial court erred in not allowing Social Security benefits which the wife received and which were derived from her husband's Social Security account as credit against his alimony arrearage. *Frazier*, 455 So. 2d at 885. In discussing

whether or not to extend derivative Social Security benefits to alimony claims, the court in *Frazier* remarked:

> [w]e cannot fathom any valid reason or reasonable logic as to why the rule of law in the *Binns* and *Bowden* cases, *supra*, should not apply to periodic alimony as well as to child support. One of the obvious purposes of Social Security benefits is to partially replace income which is lost because of the retirement of an employee because of age or disability. The payments substitute for income.

*Frazier*, 455 So. 2d at 885.

¶18. Appellant contends that the instant case can be distinguished from the *Mooneyham* case because it deals with retirement benefits rather than disability benefits. This Court, in *Bradley*, applied the *Mooneyham* rule to a situation dealing with derivative Social Security retirement benefits, evidently finding no reason to distinguish between Social Security benefits premised on retirement as opposed to disability.

¶19. Appellant asserts that Congress did not intend to permit Social Security payments to be an alternate source of income for the satisfaction of an alimony obligation. No cases were cited by Appellant to sustain this conclusion. This Court has held that it will not consider an assertion of error for which there is no authority cited. *Armstrong v. Armstrong*, 618 So. 2d 1278, 1282 (Miss. 1993); *Smith v. Dorsey*, 599 So. 2d 529, 532 (Miss. 1992); *R. C. Petroleum, Inc. v. Hernandez*, 555 So. 2d 1017, 1023 (Miss. 1990).

¶20. Appellant insists that the decision of the chancellor to credit derivative Social Security benefits against alimony represented a downward modification of the alimony granted to Betty Spalding, asserting that William failed to meet his burden of proof regarding a material change in circumstances. This Court, in *Mooneyham*, applied derivative Social Security benefits as credit against child support obligations. *Mooneyham*, 420 So. 2d at 1074-75. Here, we indicated that derivative Social Security payments credited against child support obligations are to be considered as substitute income. *Mooneyham*, 420 So. 2d at 1074. The chancellor in the instant case applied that same logic to derivative Social Security benefits with respect to alimony, and treated the credit against alimony as an alternate source of income out of which alimony obligations are permitted be satisfied.

¶21. The chancellor arrived at the same conclusion as did the Alabama Court of Civil Appeals in *Frazier*, *supra*, i.e., no valid reason exists to treat derivative Social Security benefits differently with respect to alimony or child support. In the instant case, Betty Spalding's Social Security benefits are derived in large part from William's work history and income record. The monies paid into the Social Security fund by William and his employers for the duration of the marriage and the time following the divorce generated the source from which Betty Spalding's benefits are paid.

¶22. The chancellor applied the holding in *Mooneyham* concerning derivative Social Security benefits as credit against child support obligations to analogous circumstances in an alimony claim. Ample evidence in support of his ruling is found in both Mississippi law and the law of our sister state of Alabama. The chancellor applied the correct legal standard, did not abuse his discretion, and did not commit manifest error. Accordingly, this assignment of error is without merit.

**THE LOWER COURT ERRED IN NOT GRANTING THE RELIEF REQUESTED BY BETTY H. SPALDING; THAT IS, THE ENFORCEMENT OF THE COUNTY OF LOS ANGELES DECREE AND A JUDGMENT THEREAFTER FOR ARREARAGES, ATTORNEY FEES AND COURT COSTS.**

¶23. Appellant contends that the chancellor erred in refusing to award her reasonable attorney's fees and costs. This Court has repeatedly indicated that an award of attorney's fees in divorce circumstances is largely a matter entrusted to the discretion of the trial court. *Armstrong*, 618 So. 2d at 1282; *Martin v. Martin*, 566 So. 2d 704, 707 (Miss. 1990); *Ladner v. Ladner*, 436 So. 2d 1366, 1375 (Miss. 1983). In the present case, the chancellor found that William Spalding was not in contempt due to a combination of laches, statute of limitations, and credit for derivative Social Security benefits. The chancellor further found that Betty had assets of approximately $100,000. The chancellor stated that "Betty has substantial assets and there is no contempt, [therefore] Betty is not entitled to attorney's fees on a modification."

¶24. In the Court's opinion, the chancellor did not abuse his discretion. After the chancellor's ruling that the derivative Social Security payments could be applied to alimony and arrearage, Betty's contempt claim had no support in the evidence. Also, substantial evidence exists that Betty had ample assets out of which to pay attorney's fees and costs. Accordingly, this assignment of error is without merit.

## CONCLUSION

¶25. The chancellor did not err in allowing derivative Social Security benefits as a substitute income stream out of which alimony obligations may be satisfied. He applied this Court's ruling in *Mooneyham* concerning derivative Social Security payments as satisfying child support obligations to analogous facts in an alimony claim. The chancellor did not abuse his discretion in denying attorney's fees and costs to Betty Spalding because there was no finding of contempt and Betty Spalding has substantial assets out of which she can pay attorney's fees and costs.

¶26. The chancellor's ruling is, therefore, affirmed.

**¶27. AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND SMITH, JJ., CONCUR. McRAE AND MILLS, JJ., CONCUR IN RESULT ONLY.**