I.
In an arguably unique factual setting we are asked this day to consider whether, upon the breakup of a couple which has lived together for many years without benefit of marriage, a chancery court may order a division of property by reference to the economic contributions the two parties have made to the accumulation of that property. Because we afford common law marriages no recognition, there is in our law no authority to award alimony in any such setting. On the other hand, by analogy to the dissolution of a common law partnership, our law requires an equitable distribution of assets upon breakup.
As will be explained presently, the chancellor correctly understood the controlling principles of law and applied those to factual findings which withstand challenge under our substantial evidence rule. We affirm.
 II.
Norma Jean Pickens and Robert Ellis Pickens were married on January 9, 1948. Five children were born of this marriage. By decree of the Chancery Court of Monroe County, Mississippi, entered September 25, 1962, Robert Ellis and Norma Jean were divorced.
At some point in 1963, approximately a year after the divorce, Robert Ellis and Norma Jean began living with each other again. The parties discussed remarriage and even went so far as to apply for a license. The remarriage never took place because Robert Ellis did not want to take the legally required blood test. Notwithstanding, the parties maintained a stable family relationship for the next twenty years, which included the birth of two additional children. More important for present purposes, the parties accumulated various items of real and personal property, modest in value.
In August of 1983, Robert Ellis retired from his job with Purnell Pride in Tupelo and substantially contemporaneous therewith, he and Norma Jean permanently separated.
On October 17, 1983, Norma Jean Pickens commenced the present proceedings by filing in the Chancery Court of Lee County, Mississippi, her complaint demanding, inter alia, "an equitable division of the property accumulated during the time they lived together". In due course the case came on for trial at the conclusion of which the chancellor announced the following findings:
 During the year 1962 they were divorced by decree of this Court, and they remained separate and apart for approximately one year, until the year 1963 when by mutual agreement they began to live together and have cohabitated from that time until their separation during the year 1983.
 It is admitted by both that they held themselves out to the community as being married, and in all respects, save and except only the marriage ceremony, have conducted themselves as husband and wife. Their two youngest children were born during this time.
 * * * * * *
 At the time of separation there was on hand some $19,000.00 in Certificates of Deposit mostly in the name of Robert Ellis Pickens; and one of the other children, but in the one case in the name of *Page 874 
Mr. Pickens jointly with Norma Jean Pickens.
 In addition to these funds there was a house and lot which had been occupied as a home for the two of them and their children, which is and always has been in the name of Robert Ellis Pickens and not in the name of Norma Jean Pickens.
 During most of this twenty year period, except only a short time following the birth of two of the children, Norma Jean Pickens worked at local factories, Robert Ellis Pickens worked at Purnell's.
 It appears that they both were hard workers, diligent workers. It appears, and I now find, that both contributed substantially to the care, and maintenance of the family and themselves.
 Robert Ellis Pickens earned more dollars than Norma Jean Pickens, but even so, she did the housework, and in my judgment the two of them were equal in their contributions to the ongoing of the family and the accumulation of the portion of the property now owned.
 It is true that Robert Ellis Pickens received by inheritance from his parents a parcel of land which was converted into $7,500.00 cash. In addition, he received some $3,200.00 for injuries received by him in an automobile accident.
 And he received certain other funds by way of lump sum retirement benefits upon his retirement from Purnell's, and certain Social Security lump sum payments.
 * * * * * *
 The furniture and furnishings of the house are to be divided as nearly as possible on an equal basis. I will allow the parties one final effort to make that division, and failing that, will make it myself as best I can.
 The more weighty matters than the ones that have caused some perplexity, and considerable study, involved the equitable distribution of the remaining property.
 I have said that with the exception of certain designated portions coming from inheritance and otherwise, their interest in my opinion is equal.
 There has been some appreciation in the value of the house without question. There has been some contribution to the value of the house by work and purchase by Norma Jean Pickens.
 This is my opinion about (1) the Certificates as follows: One-half the amount of the Certificates results from matters beyond the earnings of Norma Jean Pickens, so that one-half is set over to Mr. Robert Ellis Pickens, with the balance then to be divided equally between the two of them.
 The house is said to be worth, by Mr. Robert Ellis Pickens, $20,000.00. By virtue of his inheritance he is entitled to equity of $8,000.00 in the house, and the remaining value being $12,000.00 is to be divided equally between Norma Jean Pickens and Robert Ellis Pickens.
 Mr. Pickens has testified that he on several occasions offered Norma Jean Pickens the '78 Ford LTD, and I now direct that he deliver this automobile to her.
 A lien is hereby impressed against the Certificates of Deposit until the amounts of money due Mrs. Pickens under the Decree of this Court be delivered unto her.
 The cost of this proceeding are taxed against Robert Ellis Pickens. . . .
 * * * * * *
 It having been announced that the parties are unable to reach an agreement as to the division of the personal property I now supplement my earlier Opinion to deal with those items that appear on Exhibit "A". [The chancellor then proceeded to distribute the items so listed.]
On May 17, 1984, the Chancery Court entered its final judgment implementing and carrying into effect the aforesaid findings of fact and conclusions of law. From that judgment, Robert Ellis Pickens has appealed to this Court where the matter is now ripe for review. *Page 875 
 III.
Robert Ellis Pickens presents a single assignment of error:
 The lower court erred in the division of the property between the Appellant and Appellee.
As is apparent from the brief filed on his behalf, however, Robert Ellis challenges both the legal principles according to which the chancellor decided the case as well as the factual findings to which those principles have been applied.
We begin with the undisputed: that the legal relationship of husband and wife may be created only in conformity with the procedures authorized by the statute law of this state. Miss. Code Ann. §§ 93-1-1, et seq. (1972 and Supp. 1985). Cohabitation which had not ripened into a common law marriage prior to April 5, 1956, is wholly ineffective to vest marital rights in either party thereto. Miss. Code Ann. § 93-1-15 (1972). In consequence of this law, we have held that a woman may not inherit from a man with whom she has lived under what prior to 1956 would have been recognized as a common law marriage, In Re Estate of Alexander,445 So.2d 836 (Miss. 1984), nor may such a woman claim and receive workers' compensation benefits as a dependent widow.Dale Polk Construction Company v. White, 287 So.2d 278 (Miss. 1973).
Notwithstanding, upon permanent separation, our law authorizes and sanctions an equitable division of property accumulated by two persons as a result of their joint efforts. This would be the case were a common law business partnership breaking up. It is equally the case where a man and woman, who have accumulated property in the course of a non-marital cohabitation, permanently separate.
Chrismond v. Chrismond, 211 Miss. 746, 52 So.2d 624 (Miss. 1951) is instructive. The facts of that case reflected that Lon and Mable Chrismond had lived together for approximately ten years, only to discover that they were not legally married because Lon Chrismond's prior marriage to another woman had never been lawfully terminated. Upon the breakup of the relationship between the Chrismonds, however, this Court held that Mable was
 entitled to an equitable division of the property accumulated by their joint efforts during the time they lived together as man and wife.
211 Miss. 746, 52 So.2d at 629.
This was so held, despite the fact that there existed between the two no legally effective marriage. The Chrismond court then found as a fact that Mable Chrismond had cared for Lon Chrismond and kept house for him, had assisted him in the accumulation of property and had worked with him in his business. The authority to order an equitable division of the property accumulated by the Chrismonds through their joint efforts during the time they were living together was held well within "the equity powers of the court". 52 So.2d at 629.
In Taylor v. Taylor, 317 So.2d 422 (Miss. 1975) the parties had "lived together and shared the vicissitudes of life for eighteen years". 317 So.2d at 423. No lawful marriage between the parties existed. Taylor recognized that in such setting, and upon the permanent separation of the parties, alimony is not allowable. On the other hand, the Taylor court recognized and reaffirmed the rule of Chrismond authorizing award to the woman of
 a share of the property accumulated by the joint efforts of the parties during their relationship.
317 So.2d at 423.
The Taylor court recognized that one means of effecting such a property division was a directive that the man pay a fixed sum at periodic intervals for a specified period of time, in that instance $75.00 per month for a period of 36 months. The argument that this was in effect an award of alimony, which would not have been authorized because the parties were not married, was correctly rejected.
The principles of Chrismond and Taylor are controlling here. Where parties such as these live together in what must at *Page 876 
least be acknowledged to be a partnership and where, through their joint efforts, real property or personal property, or both, are accumulated, an equitable division of such property will be ordered upon the permanent breakup and separation.[1]
In determining what is an equitable division, the chancellor is by no means limited to a consideration of the earnings of the parties and cash contributions made by each to the accumulation of the properties. As any freshman economics student knows, services and in kind contributions have an economic value as real as cash contributions. In such situations, where one party to the relationship acts without compensation to perform work or render services to a business enterprise or performs work or services generally regarded as domestic in nature, these are nevertheless economic contributions. Cf. Tedford v. Dempsey, 437 So.2d 410, 422 (Miss. 1983). They are to be valued by reference to the cost of similar services in the marketplace. Where, as here, the man accepted the benefit of such services, he will not be heard to argue that he did not need them and that their economic value should not be considered as the woman's economic contributions to the joint accumulation of property between them.
Our legal premises established, we find Robert Ellis Pickens nevertheless arguing that all of the property at issue was acquired with his money and that Norma Jean made no contribution whatsoever thereto, financial or otherwise. This seems on its face unlikely in view of the undisputed fact that Norma Jean was employed regularly during the 1963-1983 conhabitation between the parties, excepting only brief respites for two childbirths during the course of each of which she labored in a different sense. For the nine years immediately preceding this action, Norma Jean earned in the aggregate approximately $65,000.00.
Sufficient unto the day is remembrance of our limited scope of review regarding factual findings made by a trial judge sitting without a jury. So long as there is substantial evidence in support of the facts as found by the trial judge, we have no authority to reverse, even though we be of the view that, had we been the factfinders, we might have concluded otherwise. See,e.g., Liddell v. Jones, 482 So.2d 1131, 1133 (Miss. 1986);Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983);Richardson v. Riley, 355 So.2d 667, 668 (Miss. 1978).
Our comparison of the evidence in the case with the findings made by the chancellor make it appear that he may even have given Robert Ellis the benefit of the doubt at several points. While the household furniture and furnishings were divided equally, the values reflected by the homestead of the parties and the certificates of deposit were not. The share of each given Robert Ellis more than fairly reflected the contributions he made by virtue of his $7500.00 inheritance and the $3,200.00 automobile accident settlement he received.
In sum, both the findings expressly announced by the chancellor, as well as those regarding the extent of economic contributions by each of the parties toward the joint accumulation of properties implicit in the chancellor's opinion,see, e.g., Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985);Kelly v. Shoemake, 460 So.2d 811, 817 (Miss. 1984); In ReEnlargement of Boundaries of Yazoo City, 452 So.2d 837, 842 (Miss. 1984), are well within the evidence.
AFFIRMED. *Page 877 
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
[1] In the context of dissolution of a valid marriage, we have recognized that the parties may be entitled to an equitable division of jointly accumulated property, the division to be made by reference to the economic contributions made by each to the acquisition and maintenance of the property. See Maxcy v. Estateof Maxcy, 485 So.2d 1077, 1079 (Miss. 1986); Watts v. Watts,466 So.2d 889 (Miss. 1985); Clark v. Clark, 293 So.2d 447, 450 (Miss. 1974). That we may recognize other rights arising out of the marital relationship provides no reason on principle why we should deny an equitable property division upon dissolution of a non-marital cohabitation.