# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01040-SCT

*WILLIAM L. DEMYERS*

*v.*

*LILLEMOR DEMYERS*


## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 06/02/97 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JAMES H. GABRIEL |
| ATTORNEY FOR APPELLEE: | ANITA MATHEWS STAMPS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 08/26/1999 |
| MOTION FOR REHEARING FILED: | 01/21/1999 |

MANDATE ISSUED: 09/02/1999


**EN BANC.**


**PRATHER, CHIEF JUSTICE, FOR THE COURT:**


¶1. On January 7, 1999, this Court issued an opinion from which the appellant filed the instant motion for rehearing. The motion for rehearing is hereby denied. The original opinion is withdrawn, and this opinion substituted therefor.


## STATEMENT OF THE CASE

¶2. This case arises from a lawsuit filed by William L. DeMyers (hereinafter William), in which he sought to have the Chancery Court of Hinds County order Lillemor DeMyers (hereinafter Lillemor) to reconvey the title to her Clinton, Mississippi home. After a trial on the merits, the chancellor dismissed William's complaint. On appeal, William

presents the following issues for consideration by this Court:

**I. WHETHER THE TRIAL COURT IMPROPERLY BASED ITS OPINION AND JUDGMENT ON A FOREIGN JUDGMENT THAT WAS NOT ENROLLED, AND FOR WHICH THE STATUTE OF LIMITATIONS HAD RUN?**

**II. WHETHER THE TRIAL COURT FAILED TO FIND AN EQUITABLE ESTOPPEL, CONSTRUCTIVE TRUST REQUIRING THE PROPERTY TO BE RECONVEYED TO WILLIAM AND THAT LILLEMOR WAS UNJUSTLY ENRICHED BY BEING ALLOWED TO RETAIN THE TITLE TO THE PROPERTY?**

**III. WHETHER THE OPINION OF THE COURT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?**

**IV. ALTERNATIVELY, WHETHER THE APPELLANT IS DUE A MONEY JUDGMENT OR EQUITABLE LIEN AGAINST THE PROPERTY FOR AN EQUITABLE DISTRIBUTION OF THE ASSETS ACCUMULATED DURING THEIR RELATIONSHIP?**

**V. WHETHER THE TRIAL COURT ERRED BY FAILING TO GRANT A NEW TRIAL BECAUSE OF THE INEFFECTIVENESS OF THE APPELLANT'S ATTORNEY?**

¶3. This Court finds that the issues raised by the appellant are without merit. Accordingly, the judgment of the chancellor is affirmed.

## STATEMENT OF THE FACTS

¶4. William and Lillemor were married from 1976 until 1986. The California divorce decree required William to pay $500.00 per month in child support, and awarded possession and title of the marital home (located at 10441 Christmas Drive, Huntington Beach, California) to Lillemor. William was also ordered to pay the second mortgage on the marital home.

¶5. William never paid the child support on a regular basis, and he became delinquent in payments on the second mortgage. Lillemor was forced to request money from her parents in Sweden, in order to pay the second mortgage. Ultimately, Lillemor sold the marital home, in order to avoid an imminent foreclosure. With the proceeds from that sale, Lillemor paid the liens against the marital home. The remaining money was invested in the Clinton home (located at 134 Kelvin Drive in Clinton, Mississippi) -- in which, at

various times, the couple tried to live together and be reconciled. On May 15, 1992, William transferred to Lillemor fee simple title in the Clinton home. He now claims that the conveyance should be set aside.

## LEGAL ANALYSIS

¶6. In reviewing cases such as this, the chancellor's decision will not be disturbed, "unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or an erroneous legal standard was applied." *Madden v. Rhodes*, 626 So.2d 608, 616 (Miss. 1993) (citations omitted). William raises several issues for review under this standard.

### I. WHETHER THE TRIAL COURT IMPROPERLY BASED ITS OPINION AND JUDGMENT ON A FOREIGN JUDGMENT THAT WAS NOT ENROLLED, AND FOR WHICH THE STATUTE OF LIMITATIONS HAD RUN?

¶7. William argues that the trial court erred by considering the California divorce decree, which was executed December 1, 1986. However, William introduced the document as evidence.

> "One may not complain on review of errors for which he was responsible . . . (a)n appellant will not be permitted to take advantage of errors for the commission of which he was responsible, or which he himself committed, caused, brought about, provoked, participated in, created, or helped to create, or contributed to." *Planters Bank v. Garrott*, 239 Miss. 248, 122 So.2d 256, 261 (Miss 1960). In particular, where a party has introduced evidence on an issue, that party may not complain about the admission of evidence on the same proposition by an opposing party. *Thornton v. Shows*, 537 So.2d 1363, 1366 (Miss. 1989); *Deposit Guaranty Bank & Trust Co. v. Nelson*, 212 Miss. 335, 54 So.2d 476, 480 (1951).

*Brown by and Through Webb v. Blackwood*, 697 So.2d 763, 775 (Miss. 1997). Therefore, this issue is without merit.

### II. WHETHER THE TRIAL COURT FAILED TO FIND AN EQUITABLE ESTOPPEL, CONSTRUCTIVE TRUST REQUIRING THE PROPERTY TO BE RECONVEYED TO WILLIAM AND THAT LILLEMOR WAS UNJUSTLY ENRICHED BY BEING ALLOWED TO RETAIN THE TITLE TO THE PROPERTY?

¶8. William claims that Lillemor promised him that she would reconvey the Clinton

home to him but has not done so due to fraud, abuse of confidence, or unconscionable conduct. William asserts that Lillemor holds the legal title to property which, by equity and conscience, she should not have. In sum, William argues that a constructive trust existed between the parties, such that the conveyance of the subject property to Lillemor should be set aside.

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*Alvarez v. Coleman*, 642 So. 2d 361, 367 (Miss. 1994) (quoting *Planters Bank & Trust v. Sklar*, 555 So. 2d 1024, 1034 (Miss. 1990)).

¶9. The chancellor found (based on conflicting testimony) that no constructive trust existed between the parties. This is basically a case of one party's word against the other; and therefore, the judgment of the chancellor is given deference.

> The trial judge saw these witnesses testify. Not only did he have the benefit of their words, he alone among the judiciary observed their manner and demeanor. He was there on the scene. He smelled the smoke of battle. He sensed the interpersonal dynamics between the lawyers and the witnesses and himself. These are indispensable.

*Madden v. Rhodes*, 626 So. 2d 608, 625 (Miss. 1993) (quoting *Culbreath v. Johnson*, 427 So. 2d 705, 708 (Miss. 1983)).

¶10. Furthermore, there was nothing in writing to indicate that Lillemor promised to reconvey the property. To the contrary, Lillemor vehemently denied that she had made such a promise -- either oral or written. The chancellor, after observing the testimony, found for Lillemor.

¶11. William had the burden of proving the existence of a constructive trust by clear and convincing evidence, and he failed to do so. *See Alvarez*, 642 So. 2d at 368.

> Constructive trusts are created for the purpose of preventing unjust enrichment, whereby one unfairly holding a property interest may be compelled to convey that interest to whom it justly belongs. *Allgood v. Allgood*, 473 So.2d 416 (Miss.1985). "It is unjust enrichment under cover of the relation of confidence, which puts the court in motion." *Russell v. Douglas*, 243 Miss. 497 at 506, 138 So.2d 730 (1962) citing *Sinclair v. Purdy*, 235 N.Y. 245, 139 N.E. 255 (1923)

(Cardoza, J.).

* * *

> An enforceable trust will not arise from the mere breach of an oral promise to hold land in trust. There must be conduct influential in producing the result, and but for which such result would not have occurred, amounting, in the view of a court of equity, to fraud in order to save the case from the Statute of Frauds . . .

> *Lipe v. Souther*, 224 Miss. at 483-84, 80 So. 2d at 475.

*Alvarez*, 642 So. 2d at 367-68.

¶12. There is no evidence that Lillemor was unjustly enriched by this conveyance or that she was influential in causing the transaction. In fact, the chancellor specifically found otherwise. Moreover, Lillemor gave ample consideration for the Clinton home, including approximately $108,000 in: (a) substantial financial investment in the Clinton home's construction, and, (b) the payment of significant debt incurred by William, which had attached as liens against the California home. Furthermore, as the chancellor correctly found, Lillemor had a reasonable expectation (after ten years of marriage and two children) that William would provide a home for her and their children. This is particularly true, given that the California court had ordered him to do so in the divorce decree.

¶13. Thus, there was substantial credible evidence in the case *sub judice* to support the chancellor's finding that the transfer of the Clinton home to Lillemor was valid. William's argument to the contrary is without merit.

### III. WHETHER THE OPINION OF THE COURT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

¶14. Once again, William argues that the California divorce decree should not have been admitted into evidence. As stated earlier, William offered the document into evidence. Therefore, this argument is without merit.

### IV. ALTERNATIVELY, WHETHER THE APPELLANT IS DUE A MONEY JUDGMENT OR EQUITABLE LIEN AGAINST THE PROPERTY FOR AN EQUITABLE DISTRIBUTION OF THE ASSETS ACCUMULATED DURING THEIR RELATIONSHIP?

¶15. William was not living with Lillemor at the time he conveyed the property. However, William argues that, since they lived together, at times, after the divorce, he is due a monetary judgment or equitable lien for the amount of money he invested in the Clinton property.

¶16. In support of his argument, William cites *Pickens v. Pickens*, 490 So.2d 872 (Miss. 1986). In *Pickens*, the parties were married fifteen years and had five children, prior to their divorce. After the divorce, the parties lived together for twenty years, had two more children, and held themselves out to the community as man and wife. *Pickens*, 490 So. 2d at 873. After thirty-five years and seven children, the parties finally separated. This Court affirmed the chancellor's decision to divide the parties' property and held:

> . . . upon permanent separation, our law authorizes and sanctions an equitable division of property accumulated by two persons as a result of their joint efforts. This would be the case were a common law business partnership breaking up. It is equally the case where a man and woman, who have accumulated property in the course of a non-marital cohabitation, permanently separate.

*Id.* at 875.

¶17. *Pickens* is easily distinguishable from the case at hand. Although the DeMyerses tried, from time to time, to reconcile after their divorce, they did not live together as husband and wife for twenty years after their divorce. Rather, the record shows that Lillemor lived in the Clinton house with her son, until they were dispossessed of the house by William. There is no evidence of an ongoing partnership between Lillemor and William, particularly with regard to this house.

¶18. It is noteworthy that even the *Pickens* court recognized the importance of the chancellor's findings and conclusions. Furthermore, although the *Pickens* court approved the equitable division of the parties' property, that division was based on common law principles of business partnerships. William, appears to confuse that division of property with the equitable distribution of marital property in divorce cases. Under either theory, however, William is not entitled to the property because (a) there is no evidence of an ongoing partnership with Lillemor, and (b) the Clinton home, which was acquired after the marriage, was not marital property.

¶19. Thus, the facts of this case fail to support the equitable claims raised by William. As a result, the chancellor correctly dismissed William's suit.

### V. WHETHER THE TRIAL COURT ERRED BY FAILING TO GRANT A NEW TRIAL BECAUSE OF THE INEFFECTIVENESS OF THE APPELLANT'S ATTORNEY?

¶20. William argues that he received ineffective assistance of counsel, based on the fact that his trial counsel committed suicide two days after the trial *sub judice*. William cites no authority for this position. "[F]ailure to cite authority . . . precludes consideration on

appeal." *Guardianship of Snodgrass*, 692 So. 2d 85, 87 (Miss. 1997). Furthermore, the constitutional right to effective assistance of counsel does not apply to a civil proceeding. This issue, therefore, is also without merit.

## CONCLUSION

¶21. The issues raised by the appellant are without merit. For this reason, the judgment of the trial court is affirmed.

¶22. **AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**