44 So.3d 371 (2010)
Eddie J. COTTON, Appellant,
v.
Fannie M. COTTON, Appellee.
No. 2008-CA-00626-COA.
Court of Appeals of Mississippi.
January 26, 2010.
Rehearing Denied June 15, 2010.
Certiorari Denied September 23, 2010.
*372 Ross R. Barnett, Jr., Jackson, attorney for appellant.
Leslie B. Shumake, Jr., Olive Branch, attorney for appellee.
EN BANC.
MYERS, P.J., for the Court.
¶1. Eddie J. Cotton appeals the chancery court's division of property after his marriage to Fannie M. Cotton was annulled. He claims that: (1) the property division was against precedent requiring good faith by the party seeking equitable distribution in a void marriage; (2) there was insufficient evidence to support the chancellor's finding that Fannie did not know she needed a divorce before she could remarry; and, alternatively, (3) the incorrect legal standard was applied because the chancellor did not properly apply the Ferguson factors. Finding no abuse of discretion in the chancellor's equitable award, we affirm the judgment of the chancery court.

*373 FACTS
¶2. Fannie filed for a divorce from Eddie based on the ground of habitual cruel and inhuman treatment. Eddie counterclaimed for an annulment, alleging that Fannie had never obtained a divorce from her first husband, Johnny L. Tate, before she married Eddie. Fannie was married to Tate on June 26, 1962. On September 26, 1969, Fannie married Eddie; however, there was no evidence that Fannie and Tate were ever divorced. The chancellor ruled that Fannie's bigamy rendered the marriage void and granted an annulment.[1]
¶3. The chancellor further held that Fannie's economic contributions to the purported marriage over the past thirty-seven years entitled her to an equitable distribution of the assets accumulated by the parties during that time. After a hearing, the chancellor divided the property as follows: (1) Fannie was awarded forty percent of Eddie's retirement account; (2) Eddie was awarded a 1999 Cadillac automobile; (3) Fannie was awarded a 1993 Chevrolet automobile and a 1991 Mazda truck; (4) Eddie was ordered to pay Fannie one-half of the equity in the marital home if he wished to remain in the home; otherwise the home was ordered to be sold and divided equally between the parties; (5) the couple's interest in a house and lot in Memphis, Tennessee, titled to Eddie and two others who are not party to this action, was awarded solely to Eddie; (6) a house in Quitman County titled in both parties' names was ordered to be sold and the proceeds divided equally; (7) acreage in Tunica County titled in both names was to be sold, and the proceeds were to be divided equally between the parties, with the monthly rent of $300 to be divided equally until the property is sold; and (8) all of the various household items requested by Fannie were awarded to her since Eddie made no objection.

STANDARD OF REVIEW
¶4. "In domestic relations cases, [the appellate court's] scope of review is limited by the substantial evidence/manifest error rule." Samples v. Davis, 904 So.2d 1061, 1063-64(¶ 9) (Miss.2004) (citing Jundoosing v. Jundoosing, 826 So.2d 85, 88(¶ 10) (Miss.2002)). We "will not disturb the chancellor's opinion when [it is] supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Id. at 1064 (¶ 9) (quoting Holloman v. Holloman, 691 So.2d 897, 898 (Miss. 1996)). However, questions of law are reviewed de novo. Amiker v. Drugs for Less, Inc., 796 So.2d 942, 945(¶7) (Miss.2000).

DISCUSSION

1. Equitable Division; Good Faith
¶5. For clarity and economy we shall address Eddie's first two issues together. Eddie argues, first, that Mississippi law requires a party to a void marriage must have entered into that marriage in good faith before the chancellor may award any form of equitable relief. Because we find this assertion without merit, we find it unnecessary to address Eddie's second issue of whether the chancellor erred in *374 finding that Fannie entered the void marriage in good faith.
¶6. At the outset, we recognize that "the legal relationship of husband and wife may be created only in conformity with the procedures authorized by the statute law of this state." Pickens v. Pickens, 490 So.2d 872, 875 (Miss.1986). However, "[w]here parties live together without benefit of marriage and where, through their joint efforts, accumulate real property or personal property, or both, a party having no legal title nevertheless acquires rights to an equitable share enforceable at law." Williams v. Mason, 556 So.2d 1045, 1049 (Miss.1990) (citing Pickens, 490 So.2d at 875-76; Taylor v. Taylor, 317 So.2d 422, 423 (Miss.1975); Chrismond v. Chrismond, 211 Miss. 746, 757-58, 52 So.2d 624, 629 (1951)). Such a remedy is only available where "the couples had ... either been married or contended to have married." Nichols v. Funderburk, 883 So.2d 554, 558(¶11) (Miss.2004).
¶7. As we have said, Eddie asserts that Fannie may not recover, not because their marriage was void, but because Fannie did not enter into the void marriage in good faith. On appeal, Eddie appears to concede that the other requirements for an equitable division were met, at least as to some of the property at issue.
¶8. Certainly, there is substantial evidence in the record that Fannie and Eddie lived together for much of their thirty-seven years of apparent marriage. They secured a marriage license, undertook a marriage ceremony before a minister, and held themselves out to the community as man and wife. Eddie and Fannie raised four children over the course of their void marriage, including two natural children of the parties born to the purported marriage, a relative that the couple adopted after the purported marriage, and a child of Fannie's marriage to Tate born prior to her purported marriage to Eddie. All of the children had reached the age of majority prior to Fannie's suit for divorce.
¶9. It also appears beyond dispute that the record contains substantial evidence that Fannie contributed to the accumulation of much of the couple's real and personal property. Testimony indicated that Fannie worked outside the home when she was able. After she was placed on social security disability, Fannie's checks were deposited directly into Eddie's checking account. Additionally, the chancellor correctly considered Fannie's non-pecuniary contributions. The supreme court has stated:
In determining what is an equitable division [of property obtained during a non-marital cohabitation following a marriage or attempted marriage of the parties], the chancellor is by no means limited to a consideration of the earnings of the parties and cash contributions made by each to the accumulation of the properties. As any freshman economics student knows, services and in kind contributions have an economic value as real as cash contributions. In such situations, where one party to the relationship acts without compensation to perform work or render services to a business enterprise or performs work or services generally regarded as domestic in nature, these are nevertheless economic contributions. They are to be valued by reference to the cost of similar services in the marketplace. Where, as here, the man accepted the benefit of such services, he will not be heard to argue that he did not need them and that their economic value should not be considered as the woman's economic contributions to the joint accumulation of property between them.
Pickens, 490 So.2d at 876 (internal citation omitted). Testimony also indicated that *375 Fannie was the primary caregiver for the children. She prepared the family meals, laundered and pressed the family's clothes, and otherwise kept the house during the purported marriage. The record supports the chancellor's findings that Fannie's domestic efforts enabled, or at least assisted in allowing, Eddie to work outside the home as the primary breadwinner.
¶10. Recognizing Fannie's contributions to the accumulation of the couple's assets, many of which are held in his possession or exclusively titled in his name,[2] Eddie argues that the chancellor erred in ordering an equitable distribution because Fannie did not enter into the marriage in good faith. Specifically, Eddie cites to the supreme court's holding in Chrismond. There, the supreme court affirmed a chancellor's equitable distribution of a couple's property where the putative wife had entered into the void marriage in good faith and had substantially contributed to the accumulation of the couple's assets. Chrismond, 211 Miss. at 757, 52 So.2d at 629.
¶11. The Chrismond court did not hold, however, that a showing of good faith is absolutely required before a putative spouse may seek an equitable distribution of the property. In fact, noting that some character of relief had often been granted to putative spouses in other jurisdictions, the supreme court cited Werner v. Werner, 59 Kan. 399, 53 P. 127 (1898), as "one of the leading cases on the point." Werner not only does not mention good faith as a prerequisite for recovery but embraces the opposite proposition, as the putative wife in that case was aware that her prior marriage had not ended by death or divorce. Id. at 128.
¶12. Instead, the court addressed the good faith issue twenty-five years later in Taylor v. Taylor, 317 So.2d 422 (Miss. 1975), and reached the opposite result that Eddie urges.
¶13. In Taylor, the supreme court considered facts almost identical to Eddie's allegations in the case at barthere was no question that Mrs. Taylor had entered a bigamous marriage without a good faith belief that her prior marriage had been dissolved by death or divorce. After ending eighteen years of purported marriage, the chancellor ordered Mr. Taylor to pay Mrs. Taylor monthly "support" for a period of three years. The supreme court affirmed that decision, holding that equity permitted the chancellor to make such an award, which the court compared to the equitable division it had authorized in Chrismond. Id. at 423. Crucially, the court rejected a dissenting view that the purported wife was precluded from any recovery because of her lack of good faith in entering into the marriage. Id. at 424 (Sugg, J., dissenting).
¶14. Here, Eddie essentially offers three reasons why this Court should not follow Taylor. First, he asserts that the holding there was not based on law or equity, but on "sympathy." This is plainly contradicted by the supreme court's opinion in Taylor, which grounds its decision in equity:
The facts in this case demonstrate without question that the chancellor did what a decent regard for the sensibilities of humanity demanded. These people lived together and shared the vicissitudes of life for eighteen years. The *376 separation cast her adrift just as surely as if she had been his lawful wife. The chancellor appears to have decided that the strict letter of the law ought not to require him to ignore that he was dealing with human beings. He did not make the allowance as alimony but as support. He felt the man had an obligation, and this Court is not disposed to reverse the manifestly just decree under the particular circumstances.
Id. at 423.
¶15. Second, Eddie cites the relatively small amount of the award in Taylor, seventy-five dollars per month for three years, which he distinguishes from an equitable division of property. As to the size of the award, it is unclear what property, if any, the Taylors owned together or separately, or whether there was a great disparity between the parties as it appeared in the instant case, so it is impossible or at least imprudent to use the size of the awards as a basis for distinguishing these cases. As to the character of the award, it is true that the supreme court's opinion in Taylor is unclear as to exactly what the chancellor had awarded, calling it "support." However, any ambiguity as to Taylor's holding has been resolved in subsequent decisions of the court. In the 1986 Pickens decision, the supreme court noted that the award of "support" in Taylor was simply "one means of effecting [an equitable] property division." 490 So.2d at 875. Likewise, in 2004 the court in Nichols noted: "In Taylor, this Court again held that a putative wife was entitled to the equitable distribution of property upon separation." 883 So.2d at 557(¶11).
¶16. Eddie's final argument, that the court's split decision in Taylor is an outlier and that the dissent in that case more accurately represents the law of the state, appears to be plainly contradicted by subsequent decisions of the court. In Pickens, the court addressed a situation where neither party could claim good faith-the parties divorced but resumed cohabitation shortly thereafter, holding themselves out as a married couple and otherwise conducting themselves as husband and wife for an additional twenty years and adding two children to the family after the divorce. 490 So.2d at 873. Both the husband and the wife unquestionably knew that they had no legal marriage, but the court nonetheless affirmed an equitable distribution of the property obtained through their joint efforts. In doing so, the court reaffirmed its holdings in Chrismond and Taylor. Its analysis, from which good faith is conspicuously absent, is instructive:
Notwithstanding [that the legal relationship of husband and wife may be created only in conformity with the procedures authorized by the statute law of this state], upon permanent separation, our law authorizes and sanctions an equitable division of property accumulated by two persons as a result of their joint efforts. This would be the case were a common law business partnership breaking up. It is equally the case where a man and woman, who have accumulated property in the course of a non-marital cohabitation, permanently separate.

Chrismond v. Chrismond, 211 Miss. 746, 52 So.2d 624 (Miss.1951) is instructive. The facts of that case reflected that Lon and Mable Chrismond had lived together for approximately ten years, only to discover that they were not legally married because Lon Chrismond's prior marriage to another woman had never been lawfully terminated. Upon the breakup of the relationship between the Chrismonds, however, this Court held that Mable was entitled to an equitable division of the property accumulated by their joint *377 efforts during the time they lived together as man and wife.
211 Miss. 746, 52 So.2d at 629.
This was so held, despite the fact that there existed between the two no legally effective marriage. The Chrismond court then found as a fact that Mable Chrismond had cared for Lon Chrismond and kept house for him, had assisted him in the accumulation of property and had worked with him in his business. The authority to order an equitable division of the property accumulated by the Chrismonds through their joint efforts during the time they were living together was held well within "the equity powers of the court." 52 So.2d at 629.
In Taylor v. Taylor, 317 So.2d 422 (Miss.1975) the parties had "lived together and shared the vicissitudes of life for eighteen years." 317 So.2d at 423. No lawful marriage between the parties existed. Taylor recognized that in such setting, and upon the permanent separation of the parties, alimony is not allowable. On the other hand, the Taylor court recognized and reaffirmed the rule of Chrismond authorizing award to the woman of
a share of the property accumulated by the joint efforts of the parties during their relationship.
317 So.2d at 423.
The Taylor court recognized that one means of effecting such a property division was a directive that the man pay a fixed sum at periodic intervals for a specified period of time, in that instance $75.00 per month for a period of 36 months. The argument that this was in effect an award of alimony, which would not have been authorized because the parties were not married, was correctly rejected.
Pickens, 490 So.2d at 875 (footnote omitted). It bears mentioning that the Pickens court's rationale closely mirrors that of the Kansas Supreme Court's 1898 decision in Werner, which was relied upon by the Chrismond court. Both base a putative spouse's right to recovery on equitable principles, reflecting her contribution to the acquisition of the assets and analogizing the dissolution of a void marriage to the dissolution of a business partnership. Pickens, 490 So.2d at 875; Werner, 53 P. at 128.
¶17. Because we find that good faith is not required under Mississippi law to support an equitable distribution of property acquired during a void marriage, this issue is without merit.

2. Ferguson Factors; Extent of the Award
¶18. In his remaining issue, Eddie argues that the chancellor erred in failing to consider the familiar Ferguson guidelines, as outlined in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994), in effecting an equitable division of the property.
¶19. The chancellor, in her written opinion, made no express mention of Ferguson or its specific factors. Strictly speaking, however, Ferguson on its own terms is applicable only where the chancellor addresses the equitable division of "marital property" "incident to a divorce." Id. at 925. Furthermore, the supreme court has held that the chancellor is only required to address those factors that are relevant to the case at hand, Weathersby v. Weathersby, 693 So.2d 1348, 1354 (Miss. 1997), and we have previously held that failure to provide an express factor-by-factor analysis does not necessarily require reversal where we are satisfied that the chancellor considered the relevant facts. Palmer v. Palmer, 841 So.2d 185, 190 (¶18) (Miss.Ct.App.2003).
*378 ¶20. On appeal, Eddie argues that the chancellor failed to determine the value of certain assets subject to equitable distribution, particularly Eddie's retirement account and two of the vehicles, the 1993 Chevrolet and the 1991 Mazda truck. As to the vehicles, it plainly appears from the record that the chancellor did consider the value of the vehicles, noting that neither vehicle was subject to a lien and that Eddie had valued them in his Rule 8.05[3] financial declaration at $2,500 and $900, respectively. She also noted testimony where the older vehicles were described as high-mileage and unreliable. As to Eddie's pension, the chancellor noted that the only evidence as to its value was Eddie's acknowledgment that it currently paid out $1,962.63 per month. She acknowledged that no precise value had been established, but she attributed this to Eddie's refusal to disclose the retirement account on his Rule 8.05 declaration and his purported inability to recall its value.
¶21. Eddie also identifies three factors he alleges that the chancellor failed to consider in rendering her judgment. First, he asserts that the chancellor failed to consider "the degree to which [either] spouse has expended, withdrawn, or otherwise disposed of the marital assets." Ferguson, 639 So.2d at 928. He fails, however, to identify any relevant evidence concerning this factor that the chancellor failed to consider; in fact, Eddie expressly acknowledges that there does not "appear to have been any evidence adduced on that point." Second, Eddie argues that the chancellor failed to consider his financial security and the relative financial security of the parties after the distribution of property. Curiously, Eddie asserts that this factor could not have been considered because the chancellor did not know the total cash value of Eddie's pension or what it paid per month; but the latter was established in his Rule 8.05 statement and by his testimony at trial. On our review of the record, it appears that the chancellor considered all of the evidence offered at trial on this point.
¶22. Third, Eddie argues that the chancellor neglected to consider other factors that should be considered in equity. See id. In particular, he asserts that the chancellor "ignored or excused" Fannie's bigamy. This proposition is also plainly without merit, as the chancellor's written opinion did address Fannie's bigamy. The chancellor did, however, also consider other relevant facts, particularly that Fannie was sixteen years of age when she married Johnny Tate, and that Tate had abandoned his young family shortly thereafter. She also noted that Eddie was unquestionably aware of Fannie's prior marriage, if not that it was still legally in effect, because he and Fannie had raised a child born to that marriage. The chancellor also noted that Eddie could hardly claim in equity to be an "innocent" party to the void marriage, as over its thirty-seven years he frequently subjected Fannie to physical and emotional abuse; in fact, testimony indicated that Fannie had originally sought a divorce because of Eddie's abusive treatment, and that her disability stemmed from a "nervous breakdown" she suffered after being stabbed in the eye during a particularly violent incident. Fannie's testimony in this respect was corroborated by each of the three children who testified at the hearing.
¶23. After a thorough review of the record, we are satisfied that the chancellor did not err in effecting the equitable division.
¶24. THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT *379 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. IRVING, J., CONCURS IN RESULT ONLY. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ISHEE AND ROBERTS, JJ.
GRIFFIS, J., Dissenting:
¶25. Because I find error in the chancellor's division of property in this case, I respectfully dissent from the majority's holding. Accordingly, I would reverse the chancellor's judgment and remand this case for further proceedings.
¶26. The chancellor ruled that Fannie Cotton's bigamy rendered the marriage void and granted Eddie Cotton's request for an annulment. Because Eddie and Fannie were never legally married, Fannie is not entitled to the equitable distribution of property incident to a divorce. In Ferguson v. Ferguson, 639 So.2d 921, 925 (Miss.1994), the supreme court stated:
This Court has "long recognized that, incident to a divorce, the chancery court has authority, where the equities so suggest, to order a fair division of property accumulated through the joint contributions and efforts of the parties." Brown v. Brown, 574 So.2d 688, 690 (Miss. 1990); Brendel v. Brendel, 566 So.2d 1269, 1273 (Miss.1990); Jones v. Jones, 532 So.2d 574, 580-81 (Miss.1988); Clark v. Clark, 293 So.2d 447, 450 (Miss.1974). With this opinion, this Court adopts guidelines for application of the equitable distribution method of division of marital property.
The key concept in the equitable division of property is that the property be "marital property" and that it be divided "incident to a divorce."
¶27. However, an exception exists because the equitable powers of the chancery court allow an equitable division of property when the purported marriage, which the parties entered in good faith, turns out to be a void marriage. Chrismond v. Chrismond, 211 Miss. 746, 757, 52 So.2d 624, 629 (1951) (emphasis added). Thus, the question here is whether Fannie entered into her void marriage with Eddie in good faith.
¶28. In Chrismond, the husband and wife were formally married; however, when the marriage began to break down, the husband revealed that he had never divorced his previous wife. Id. at 750, 52 So.2d at 625. The supreme court held that the wife, who believed that she was lawfully married and had no knowledge of the husband's bigamy, was entitled to an equitable division of property, stating:
We think that the equity powers of the court are sufficient to protect the rights of the putative wife, where the supposed marriage which she entered into in good faith turns out to be void, and that she is entitled to an equitable division of the property accumulated by their joint efforts during the time they lived together as man and wife.
Id. at 757, 52 So.2d at 629 (emphasis added).
¶29. The facts of this case are distinguishable from Chrismond. There, the wife had no reason to believe that her marriage was void. She entered the marriage in good faith, and to deny her an equitable distribution of property would have been a truly inequitable result. It was the husband who knew his marriage was void. Here, however, Fannie knew that she had been married to Johnny Tate. *380 She also knew, or should have known, that she had not acquired a divorce from Tate at the time she married Eddie. Fannie testified that she did not get a divorce from Tate. The only evidence that she and Tate ever divorced was her testimony that she received a call from Tateafter she had married Eddiein which Tate told her that he had gotten a divorce.
¶30. I find the chancellor's ruling that Fannie entered the void marriage in good faith is clearly erroneous, manifestly wrong, contrary to the law of this state and violates public policy. The chancellor stated the following:
Mrs. Cotton appeared to be unaware that she was still married at the time of her marriage to Mr. Cotton, but when questioned further, she indicated that she became aware that her prior marriage had not been dissolved at some later time. The court did notice that Mrs. Cotton was sixteen (16) years old when she married Mr. Tate and only twenty-three (23) years old when she married Mr. Cotton. As a mature adult now, she probably should have understood that she should have been certain that she was divorced from Mr. Tate before marrying Mr. Cotton, as should Mr. Cotton, but they were only 23 and 24 years old when they married, and they obviously did not fully appreciate the importance of being certain that she was divorced before they married.... It appears that the parties entered into their purported marriage in good faith. There was no proof that Mrs. Cotton knew she was still married and concealed that fact from Mr. Cotton. She was merely mistaken about the status of her first marriage.
¶31. The supreme court has held that: "All persons are presumed to know the legal effect of their acts." Crabb v. Wilkinson, 202 Miss. 274, 280, 32 So.2d 356, 358 (1947). Fannie testified that she did not obtain a divorce from Tate. She also testified that she knew nothing about a divorce until after her marriage to Eddie. There is absolutely no evidence in the record to show that Fannie was unaware of the requirement that she first be divorced from her first husband before she could enter into a second marriage.
¶32. Even if this were the case, and even if she "did not fully appreciate the importance of being certain that she was divorced," such reasoning used as the basis to support an equitable distribution of property as if the parties had entered a legal marriage is contrary to the clear public policy of the State of Mississippi in favor and support of lawful marriage. To allow an equitable distribution as the chancellor and the majority have done, in effect, sanctions Fannie's act of bigamy by giving her the same rights to marital property as a party dissolving a valid marriage. Public policy requires that, in order to avoid the creation of a bigamous relationship, a person should be sure he or she is divorced before attempting to enter a subsequent marriage.
¶33. On one occasion, in a split decision, the supreme court awarded support to a wife who purported to marry her second husband before obtaining a divorce from her first husband. Taylor v. Taylor, 317 So.2d 422, 422-23 (Miss.1975). The supreme court made it clear that the ruling was not based on law or equity but on the basis of sympathy, stating:
The facts in this case demonstrate without question that the chancellor did what a decent regard for the sensibilities of humanity demanded.... The chancellor appears to have decided that the strict letter of the law ought not to require him to ignore that he was dealing with human beings.
*381 Id. at 423. Further, the wife was only awarded $75 per month for three years. Id. at 422. As this Court held in Nichols v. Funderburk, 881 So.2d 266, 270(¶15) (Miss.Ct.App.2003): "Granting of monthly support for a limited period of time is not the same as equitable division of property...."
¶34. The majority holds that there is no requirement of good faith in order for the chancellor to execute an equitable distribution of this couple's property; instead, it is simply one factor to be considered.[4] However, it is clear from the chancellor's order that this finding of good faith on the part of Fannie was the basis for the property division pursuant to the annulment. The chancellor found that Fannie was merely young when she married Eddie; therefore, she did not appreciate the requirement that she be divorced from her first husband before she married Eddie. The chancellor concluded: "It appears that the parties entered into their purported marriage in good faith. There was no proof that Mrs. Cotton knew she was still married and concealed that fact from Mr. Cotton. She was merely mistaken about the status of her first marriage." It was only after making this finding of good faith that the chancellor proceeded to consider the factors for the equitable distribution of the property: the length of the purported marriage, the contribution of each spouse, fault, and etc.
¶35. I find that the chancellor erred in holding that Fannie entered into the void marriage in good faith. Because her bigamous relationship rendered her marriage to Eddie void, she is not entitled to an equitable distribution of property. However, she is entitled to her share of the property owned by her and Eddie as joint tenants. Accordingly, I would reverse the judgment of the chancellor and remand this case for the chancellor to distribute the parties' joint property.
ISHEE AND ROBERTS, JJ., JOIN THIS OPINION.
NOTES
[1] We note that Fannie, in her appellee's brief, argues that the chancellor erred in granting the annulment. However, Fannie failed to file a cross-appeal in this matter. "In order for the appellee to gain reversal of any part of the decision of a trial court about which the appellant brings no complaint, the appellee is required to file a cross-appeal." Delta Chem. and Petroleum, Inc. v. Citizens Bank of Byhalia, Miss., 790 So.2d 862, 878(¶ 52) (Miss.Ct. App.2001) (citation omitted). Accordingly, this issue was not properly raised before this Court.
[2] It is unclear from the record exactly what property was jointly titled and what property was held exclusively by Eddie. Eddie's position at trial was that he held exclusive title to much, if not all, of the property; on appeal, he apparently concedes that some of the property is jointly titled, specifically the marital home, a residential property in Quitman County, Mississippi, and the two older automobiles.
[3] Uniform Chancery Court Rule 8.05.
[4] The majority states that the Chrismond court did not hold that a showing of good faith is absolutely required for a putative spouse to seek an equitable distribution. As basis for this statement, the majority finds that the Chrismond decision cited as a "leading case" Werner v. Werner, 59 Kan. 399, 53 P. 127 (1898), which does not mention a good-faith requirement. However, a reading of the Chrismond decision reveals that Werner was cited for the proposition that the rule prohibiting an alimony award to a putative spouse does not preclude an equitable distribution of property. Chrismond, 211 Miss. at 758, 52 So.2d at 629. The Chrismond court further states the good-faith requirement must be satisfied by the person seeking an equitable distribution of property, citing both 35 Am.Jur. Marriage § 53 and Krauter v. Krauter, 79 Okla. 30, 190 P. 1088 (1920), for this specific proposition. Id. at 757-59, 52 So.2d at 629.