# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-00695-SCT

*JESSICA ELIZABETH GREEN McGEE*

*v.*

*ALEX TAYLOR McGEE*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/15/2023 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY, JR. |
| TRIAL COURT ATTORNEYS: | LUTHER PUTNAM CRULL, JR. |
| | LUCIAN COLE CRULL |
| | A. E. (RUSTY) HARLOW, JR. |
| | KATHI CHRESTMAN WILSON |
| | MORGAN KAY JACKSON |
| | VICTORIA PRINCE RYALS |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | A. E. (RUSTY) HARLOW, JR. |
| | KATHI CHRESTMAN WILSON |
| ATTORNEY FOR APPELLEE: | LUTHER PUTNAM CRULL, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 10/24/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. The Montgomery County Chancery Court granted Alex McGee's complaint for divorce on the ground of adultery on June 15, 2023. Jessica McGee alleges error with the chancellor's division of marital property and award of joint legal and physical custody of the parties' three minor children. Specifically, Jessica asserts that the chancellor improperly divided Alex's retirement account on the date of the parties' second marriage, December 28,

2017.  Jessica also argues that, in awarding joint custody of the children, the chancellor focused too heavily on her adultery and did not consider the feasibility of such an arrangement since, in her view, she and Alex are unable to communicate or work together. Discerning no error, we affirm the Montgomery County Chancery Court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.     Alex and Jessica McGee married on March 24, 2011, and the couple had their first child in June 2011.  On grounds of irreconcilable differences, the McGees divorced on July 18, 2014.  The parties agreed that it was in the child's best interest that Jessica have physical custody with Alex having visitation.  The parties also signed a property settlement agreement. Around November of 2016, however, Alex and Jessica rekindled their relationship and welcomed a second child in August 2017. The couple remarried on December 28, 2017, had their third child in August 2019, and separated again around March 18, 2022.

¶3.     On March 25, 2022, Alex filed for divorce in the Montgomery County Chancery Court.  In his complaint for divorce, Alex requested sole physical and legal custody of the three children. Jessica sought joint legal custody and sole physical custody.  The chancellor granted the divorce based on adultery on June 15, 2023, and awarded joint physical and legal custody of the three children.   Jessica appeals the chancellor's division of Alex's 401(k) and the award of joint custody.  Specifically, Jessica asserts that the correct date of division is March 24, 2011, the date of the parties' first marriage, as she purports that the parties clearly worked together and accumulated joint assets since that date.  Jessica also alleges that the

2

chancellor improperly focused on her adultery in awarding joint custody, that the other factors weighed in her favor, and that joint custody is inappropriate because there is overwhelming evidence that she and Alex are unwilling to communicate and cooperate with one another.

## DISCUSSION

¶4.     The Court "'employs a limited standard of review' of the division and distribution of property in divorces." *Owen v. Owen*, 798 So. 2d 394, 397 (¶ 10) (Miss. 2001) (quoting *Reddell v. Reddell*, 696 So. 2d 287, 288 (Miss. 1997)).  The Court should not "disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Duncan v. Duncan*, 774 So. 2d 418, 419 (¶ 4) (Miss. 2000) (internal quotation mark omitted) (quoting *Kilpatrick v. Kilpatrick*, 732 So. 2d 876, 880 (Miss. 1999)).  Questions of law are reviewed *de novo*.  *HWCC-Tunica, Inc. v. Miss. Dep't of Revenue*, 296 So. 3d 668, 673 (¶ 14) (Miss. 2020) (quoting *Campbell Props., Inc. v. Cook*, 258 So. 3d 273, 275 (Miss. 2018)).  With respect to child custody cases, the Court's review, like the chancellor's, is very narrow and is limited to the best interest of the child; "it is not our role to substitute our judgment for his." *Hensarling v. Hensarling*, 824 So. 2d 583, 587 (¶ 8) (Miss. 2002).  A chancellor's custody award should be affirmed "if the record shows any ground upon which the decision may be justified." *Kerr v. Kerr*, 323 So. 3d 462, 475 (¶ 42) (Miss. 2021) (quoting *Brumfield v. Brumfield*, 49 So. 3d 138, 142 (Miss. Ct. App. 2010)).

3

**I.     Whether the chancellor erred by classifying, valuing, and dividing the parties' assets.**

¶5.     Jessica first assigns error with the chancellor's *Ferguson* analysis and his division of Alex's 401(k). *See Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). "When dividing a couple's assets, a chancellor initially must classify those assets as marital or separate property." *Lewis v. Pagel*, 172 So. 3d 162, 172 (¶ 17) (Miss. 2015) (citing *Fisher v. Fisher*, 771 So. 2d 364, 368-69 (Miss. 2000)). "Marital property is 'any and all property acquired or accumulated during the marriage.'" *Pearson v. Pearson*, 761 So. 2d 157, 162 (¶ 15) (Miss. 2000) (quoting *Hemsley v. Hemsley*, 639 So. 2d 909, 915 (Miss. 1994)). Next, the chancellor must equitably divide the marital assets pursuant to the following factors introduced in *Ferguson*:

1.     Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

   a.     Direct or indirect economic contribution to the acquisition of the property;

   b.     Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

   c.     Contribution of education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2.     The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise;

3.     The market value and the emotional value of the assets subject to

4

distribution;

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and

8. Any other factor which in equity should be considered.

*Lewis*, 172 So. 3d at 172 (¶ 17) (quoting *Ferguson*, 639 So. 2d at 928).

¶6. Jessica asserts that the chancery court failed to: (1) classify the parties' separate property in its ruling; (2) value the parties' assets; (3) equally divide the marital property; and (4) apply specific findings of fact to each *Ferguson* factor. However, in its amended order entered May 11, 2023, the chancery court did, in fact, classify the parties' separate and marital property, equally divide the classified marital property, and apply the *Ferguson* factors to its findings. Additionally, the parties themselves provided detailed lists and valuations of all assets, separate and marital.

¶7. Jessica specifically argues that the chancellor erred by dividing Alex's 401(k) from December 28, 2017, the date of the second marriage, to the date of separation, because she asserts that the correct date of accumulation is March 24, 2011, the date of the prior

5

marriage. Jessica rests the assertion on ***Pickens v. Pickens***, 490 So. 2d 872 (Miss. 1986). In ***Pickens***, the parties cohabitated for some twenty years after their divorce and accumulated real and personal property together before separating again. ***Id.*** at 873. The Court affirmed the chancery court's equitable division of the parties' accumulated property, reasoning that "[w]here parties such as these live together in what must at least be acknowledged to be a partnership and where, through their joint efforts, real property or personal property, or both, are accumulated, an equitable division of such property will be ordered upon the permanent breakup and separation." ***Id.*** at 875-76.

¶8. While the ***Pickens*** Court recognized that it was considering a "unique factual setting," the case *sub judice* does not present any exceptional issues, only the immaterial fact that the parties were previously married and divorced. ***Id.*** at 873. The general rules of property division still apply, and the assets were equitably divided in the same manner as any other divorce proceeding.

¶9. Jessica maintains that she and Alex only briefly separated after their first divorce and "clearly worked together from March 24, 2011 to accumulate assets." Thus, Jessica seeks equitable distribution of the parties' assets accumulated from the date of their first marriage, despite the facts that the first marriage ended in divorce, the parties signed a property settlement agreement, and there is no evidence that they accumulated property through their joint efforts after the divorce prior to cohabitating.

¶10. Jessica misconstrues the facts in both ***Pickens*** and her own case. In ***Pickens***, the

6

parties lived together for ten years after their divorce, held themselves out to the community as husband and wife, and applied for a license to get remarried. *Id.* The chancery court equitably divided the property that was accumulated through their joint efforts during the time they lived together and not before. *Id.* In the present case, the parties divorced on July 18, 2014, and agreed to a property settlement. As the chancellor held, the property settlement agreement signed by both parties "did in fact dispose of all property accordingly as of July 18, 2014, barred from the attack or alternate division by the doctrine of res judicata." Since the property accumulated during the first marriage was disposed of, Jessica is not entitled to further division of assets acquired during that marriage.

¶11. Following the first divorce, the parties lived separately for several years, lived together again for about eight months, and remarried in December 2017, at which point Alex ceased his child support payments. There is no evidence that the parties worked together to accumulate assets in the years they were separated before moving back in together. On the contrary, during their separation, Jessica and Alex dated other people, and Jessica purchased her own home.

¶12. Because Jessica offers no evidence that she and Alex acquired assets together during their separation, or that any assets accumulated during the cohabitation period were not equitably divided, there is no legal basis to her claim. *See Lowrey v. Lowrey*, 25 So. 3d 274, 286 (¶ 27) (Miss. 2009). Therefore, the chancery court did not err by determining that "all property accumulated after the cohabitation of the parties which was also commingled after

7

the second marriage between the parties, is marital property and subject to division."

¶13. If the Court finds that the chancellor was correct not to divide assets from the date of the first marriage, then Jessica purports that the custody arrangement from the first divorce should also be left undisturbed. The argument is without merit. The property settlement agreement precluded any further division of the parties' property, not children. Furthermore, a new custody arrangement was necessitated upon the parties' remarriage and subsequent birth of two children.

## II. Whether the chancellor erred by awarding joint physical and legal custody of the minor children.

¶14. Jessica also argues on appeal that joint custody is not appropriate because she and Alex are unable to communicate or work together to make such an arrangement feasible. Jessica also asserts that the chancellor improperly focused on her adultery when awarding joint custody.

¶15. "[T]he polestar consideration in child custody cases is the best interest and welfare of the child." *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). The chancellor must weigh the following factors when awarding custody:

> (1) age, health and sex of the child; (2) a determination of the parent that has had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parents and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; and (10) stability of home environment and employment of each parent and other factors relevant

to the parent-child relationship.

*Powell v. Ayars*, 792 So. 2d 240, 244 (¶ 7) (Miss. 2001) (citing *Albright*, 437 So. 2d at 1005).

¶16. In his opinion, the chancellor analyzed each *Albright* factor and concluded that all factors weighed equally except (1) age, health, and sex of the children, which he found slightly in favor of Jessica, and (10) moral fitness, which he found in favor of Alex. The court found, in the best interest of the children, that "[b]oth parents should have input in helping the children adjust and grow in an ever changing society."

¶17. Jessica contends that the continuity-of-care and employment factors favor her, and the moral-character factor favors neither party. She argues that she was their first child's primary caregiver during the first marriage, that she was awarded primary custody of the child after the initial divorce, and that she coordinated the care of all the children even when she was in school and Alex was away for work. Jessica maintains that Alex has only cared for the children after their separation and even then has had assistance from his mother. Thus, she asserts that continuity of care clearly favors her. With respect to employment, Jessica also maintains that, due to Alex's schedule and frequent absences for his job, the factor clearly favors her as well, especially with the benefit of her medical training.

¶18. Finally, Jessica is of the opinion that the chancellor should have weighed the moral-fitness factor neutrally because adultery is "not in and of itself a reason to deny custody," and there was no evidence that her extramarital affairs affected the children. Jessica ultimately

purports that the chancellor focused too heavily on her adultery and ignored the continuity-of- care, employment-responsibilities, and age, health, and sex of the children factors that favored her. We disagree.

¶19. The chancellor did not deny her custody; he granted joint custody so that the children can be raised by both parents. Additionally, there is no evidence that the chancellor focused too heavily, or at all, on Jessica's infidelity in awarding joint custody. The Court has held that "[w]hile adultery may not be used as a sanction in custody awards, moral fitness 'encompasses the charge of adultery.'" *Denham v. Denham*, 351 So. 3d 954, 963 (¶ 18) (Miss. 2022) (quoting *Carr v. Carr*, 480 So. 2d 1120, 1123 (Miss. 1985)). The chancellor did not mention Jessica's adultery in weighing the moral-fitness factor and noted only that the factor weighed in Alex's favor. Jessica was not deprived of custody or punished for her infidelity; the chancellor merely, in his discretion, weighed moral fitness in Alex's favor and awarded equal custody to both parties in the best interest of the children after considering all of the *Albright* factors.

¶20. Finally, there is no evidence that the parties are unwilling to cooperate to make joint custody feasible, as Jessica purports for the first time on appeal. Jessica testified at trial as follows: "I realize that these children need both of us. That they need their mother and their father as much as they can have them . . . . There shouldn't be an issue with that. Me and Alex had these children together. Our kids need that." The chancellor "is in the best position to evaluate the credibility, sincerity, capabilities and intentions of the parties." *Cuccia v.*

10

*Cuccia*, 90 So. 3d 1228, 1235-36 (¶ 21) (Miss. 2012) (internal quotation mark omitted) (quoting ***Crider v. Crider***, 904 So. 2d 142, 147 (Miss. 2005)). Jessica failed to present evidence of the parties' unwillingness to work together, and she testified to the contrary at trial.

## CONCLUSION

¶21. The Montgomery County Chancery Court did not err in its division of the parties' assets and award of joint custody. Therefore, the judgment of the Montgomery Chancery Court is affirmed.

¶22. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**